DIPPEL, Plaintiff and Appellant, v. SCIANO and wife, d/b/a TONY & DOTTIE'S TAVERN and others, Defendants: PIONEER SALES & SERVICE, INC., Respondent.

*November 29—December 29, 1967.*

444

446

For the appellant there were briefs by *Wherry & Wherry*, attorneys, and *Michael R. Wherry* of counsel, all of Milwaukee, and oral argument by *Michael R. Wherry*.

For the respondent there was a brief by *Gibbs, Roper & Fifield* of Milwaukee, and oral argument by *Richard S. Gibbs*.

BEILFUSS, J. The plaintiff-appellant states the issue to be:

"Does a cause of action based upon breach of implied warranty, arising from the sale of a product intended for use by the general public, exist in the absence of privity of contract between the seller and the ultimate user?"

Under the facts alleged and our view of the law to be applied, we deem the issue to be: Is the lack of privity of contract between the seller of the offending product and its ultimate user or consumer fatal to the injured user's claim of strict liability in tort against the seller?

The plaintiff concedes that the law of Wisconsin has always required privity of contract in an action for a breach of implied warranty.[1] *Prinsen v. Russos* (1927), 194 Wis. 142, 215 N. W. 905; *Kennedy-Ingalls Corp. v. Meissner* (1958), 5 Wis. 2d 100, 92 N. W. 2d 247; and *Strahlendorf v. Walgreen Co.* (1962), 16 Wis. 2d 421, 114 N. W. 2d 823.

During the past several years few legal subjects in the field of civil liability have undergone such change and variety of change as products liability. In addition to the case law and statutory change, products liability has been the topic of discussion and comment by many authoritative text writers and eminent authors of law review articles.[2]

---

[1] Sec. 402.318, Stats., a part of the Uniform Commercial Code, enacted in 1965, is a limited modification of this rule: "**Third party beneficiaries of warranties, express or implied.** A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section."

[2] *Pro* increased products liability. *See*: 69 Yale L. J. (1960), 1099; 24 Tenn. L. Rev. (1957), 963; 24 Tenn. L. Rev. (1957), 923; 37 Or. L. Rev. (1958), 119; 17 Bus. Law (1961), 157; 17 Stanford L. Rev. (1965), 1077; 38 S. Cal. L. Rev. (1965), 30; 1964 U. Ill. L. F. 693; 50 Minn. L. Rev. (1966), 791. *Con*: 17 Bus. Law (1961), 167; 24 Tenn. L. Rev. (1957), 938; 42 U. Det. L. J.

The rule that there could be no liability upon warranty, express or implied, without privity of contract came into being in England in *Winterbottom v. Wright* (1842), 10 M. & W. 109, 152 Eng. Rep. 402. It was an outgrowth of the beginning of the industrial revolution when it was thought it was necessary to protect struggling and unstable industry against an onslaught of disastrous claims. Typical of the disregard of the claims of persons injured by products is a quotation from *Winterbottom,* " 'it is, no doubt, a hardship upon the plaintiff to be without a remedy, but by that consideration we ought not to be influenced.' " [3] We have long since passed from the unsure days of industrial revolution to a settled and affluent society where we must be concerned about the just claims of the injured and hapless user or consumer of industrial products. The doctrines of *laissez nous faire* and *caveat emptor* have given way to more humane considerations.

Without belaboring its development it can now be said that the majority of the jurisdictions of the United States no longer adhere to the concept of no liability without privity of contract. [4] The reason, which has been reiterated most often, is that the seller is in the paramount position to distribute the costs of the risks created by the defective product he is selling. He may pass the cost on to the consumer via increased prices. He may protect himself either by purchasing insurance or by a form of self-insurance. In justification of making the seller pay for the risk, it is argued that the consumer or user has the right to rely on the apparent safety of the product and

---

(1965), 343. This list is by no means exhaustive. For a comprehensive compilation of the entire subject see Schreiber and Rheingold, *Products Liability.*

[3] Traynor, 32 Tenn. L. Rev. (1965), 363.

[4] *See* Prosser, 50 Minn. L. Rev. (1966), 791. *Also,* for a breakdown of where all 50 states stand see Schreiber and Rheingold, *Products Liability* 2:59, reprinting Brief Opposing Strict Liability in Tort by the Defense Research Institute.

that it is the seller in the first instance who creates the risk by placing the defective product on the market. A correlative consideration, where the manufacturer is concerned, is that the manufacturer has the greatest ability to control the risk created by his product since he may initiate or adopt inspection and quality control measures thereby preventing defective products from reaching the consumer.

A different consideration which has often been expressed is that the abolition of privity in implied warranty or the imposition of strict liability avoids circuity of action.[5] In a single suit the plaintiff may proceed against all or the most affluent member in the distributive chain.

This court has been sensitive to the policies and trends in the products-liability area. Even before the now famous *Henningsen* decision,[6] our court took a step in that direction in *Smith v. Atco Co.* (1959), 6 Wis. 2d 371, 94 N. W. 2d 697, 74 A. L. R. 2d 1095. While many courts were laboring under the privity requirement in both the warranty and the negligence area, with most creating some exceptions in cases of food for human consumption and of inherently dangerous or imminently dangerous products, this court took a step forward. Speaking through Mr. Justice CURRIE, the court said, at pages 383, 384:

"We deem that the time has come for this court to flatly declare that in a tort action for negligence against a manufacturer, or supplier, whether or not privity exists is wholly immaterial. The question of liability should be approached from the standpoint of the standard of care to be exercised by the reasonably prudent person in the

---

[5] This is not a valid consideration in negligence actions against sellers in Wisconsin since this court has held privity is immaterial in such suits. *Smith v. Atco Co.* (1959), 6 Wis. 2d 371, 94 N. W. 2d 697, 74 A. L. R. 2d 1095.

[6] *Henningsen v. Bloomfield Motors, Inc.* (1960), 32 N. J. 358, 161 Atl. 2d 69.

shoes of the defendant manufacturer or supplier. Such an approach will eliminate any necessity of determining whether a particular product is 'inherently dangerous.' If a manufacturer or supplier is hereafter to be relieved from liability as a matter of law by the courts, such result should be reached on the basis that there was no causal negligence established against the defendant rather than that the product was not inherently dangerous."

It was recognized in a footnote in the *Atco Case* that Wisconsin still requires privity between the plaintiff user and the manufacturer, or the supplier in breach-of-implied-warranty cases. Citing *Cohan v. Associated Fur Farms* (1952), 261 Wis. 584, 589, 53 N. W. 2d 788, and *Kennedy-Ingalls Corp. v. Meissner, supra.*

The extension of liability created in *Atco* was based on negligence, tort—rather than contract. Between that time and time of this court's decision in *Strahlendorf v. Walgreen Co., supra,* the wholesale abandonment of "privity" in implied warranty cases, spurred by *Henningsen,* swayed the country's thinking toward the "implied warranty" approach. Recognizing this trend and the limitation of its tort approach in *Atco,* the court, thinking in tort, indicated that privity in implied warranty cases would soon fall as a requirement in Wisconsin.

"Plaintiffs make a strong argument urging this court to abandon its prior holdings that privity between plaintiff and defendant is an essential requirement of a cause of action for breach of implied warranty. This court is not insensible to the present trend in the law toward striking down the existing barriers to recovery in products-liability cases. We took a decided step in that direction in *Smith v. Atco Co.* (1959), 6 Wis. (2d) 371, 94 N. W. (2d) 697, 74 A. L. R. (2d) 1095.

"A striking illustration of this liberalizing trend is found in the American Law Institute's Tentative Draft No. 7, Restatement, Torts (2d), p. 14, sec. 402A, and the accompanying notes of the reporter, Dean Prosser. This section imposes absolute liability, regardless of privity or negligence, upon a seller of defective food for human consumption or other products for intimate bodily

use which are in a defective condition unreasonably dangerous to the consumer. The reporter's notes point out that 'intimate bodily use' includes items such as hair dye, soap, detergent coming in contact with hands, permanent-wave solution, cigarettes, surgical pins for setting bone fractures, and poliomyelitis vaccine.

"When this court declared by footnote in *Smith v. Atco Co., supra,* page 383, that Wisconsin requires privity in breach-of-implied-warranty cases, it was merely stating the then present status of our law. This does not mean that this court will adhere to this rule forever, regardless of the persuasiveness of the arguments made, or authorities cited, in favor of changing it. However, we do not deem the instant case a proper one in which to give consideration to this question." *Strahlendorf v. Walgreen Co., supra,* at page 435.

Our reluctance to take the step in *Strahlendorf* has not proved a mistake. Treading lightly, this court was slowly moving in the direction of implied warranty without privity while others, in our opinion, were doing so without due consideration of the legal fictions they were creating. Dean Prosser, in his recent article, *The Fall of the Citadel,* 50 Minn. L. Rev. (1966), 791, 801, reviewed the problem:

"Until 1962 warranty had held the field, and no court proceeded on any other basis, although a good many of them had realized that this was a new and different kind of 'warranty,' not arising out of or dependent upon any contract, but imposed by law, in tort, as a matter of policy.

"There were, however, difficulties. 'Warranty' had become so closely identified to the legal profession with a contract between the plaintiff and the defendant, that it was attended by contract rules. Traditionally it has always required some reliance by the plaintiff upon an express or implied assertion; and this was often lacking on the part of the user. The Sales Act limited warranties expressly to 'buyer' and 'seller,' and limited their scope. It required notice of the breach of the warranty within a reasonable time after the buyer knew, or ought to have known, of the breach. It also made the warranty subject to disclaimer by the seller. There were other minor

problems, as to the recoverable damages, a possible election of remedies and the like."

Dean Prosser's reference to the Uniform Sales Act elucidates the most distressing problem with adopting the "implied warranty" fiction in the present case. The Uniform Sales Act as enacted by Wisconsin is the controlling law.[7] Sec. 15 of the Act (sec. 121.15, Stats. 1961), specifically provides that there are no implied warranties of quality other than those set forth in the Act. These are the implied warranties between the "buyer" and the "seller." By sec. 76 of the Act (sec. 121.76, Stats. 1961), the term "buyer" and "seller" includes only the immediate parties to the sale. Further, sec. 49 of the Sales Act (sec. 121.49, Stats. 1961), requires notice of the breach of the warranty within a reasonable time after the plaintiff knows or should know of the breach.

The Uniform Commercial Code, recently adopted, broadens the scope of implied warranty in sec. 2–318 (sec. 402.318, Stats.) by extending protection "to any natural person who is in the family or household of . . . [the] buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods . . . ." The comment to this section states that the section is not self-restrictive concerning further extension of the implied warranty:

". . . Beyond this, the section is neutral and is not intended to enlarge or restrict the developing case law on whether the seller's warranties, given to his buyer who resells, extend to other persons in the distributive chain."

The section does not substantially change the doctrine of privity. The code, in fact, does not provide a much more desirable basis for extension than does the Uniform Sales Act. While the comment to sec. 2–318 may make it more convenient to eliminate privity, the problems of

---

[7] The accident occurred before the effective date of the Uniform Commercial Code as enacted in Wisconsin.

notice and disclaimer remain. Sec. 2–607(3) (sec. 402.-607(3), Stats.) retains the Sales Act requirement of notice to the seller for any breach of warranty within a reasonable time after the buyer knows or ought to know of the breach. In the area of personal injury to a user or consumer, requiring notice to a remote seller is probably requiring too much:

"But as applied to personal injuries to a consumer, and notice to a remote seller, it has proved to be something of a booby trap for the unwary. The injured consumer is seldom 'steeped in the "business practice" which justifies the rule,' and at least until he has legal advice, it will not occur to him to give notice to one with whom he has had no dealings." 50 Minn. L. Rev. (1966), 791, 829.

In the area of "disclaimer," the Uniform Commercial Code has somewhat restricted the Sales Act rule that any warranty could be disclaimed. However, the rule is substantially retained. Sec. 2–316 (sec. 402.316, Stats.). Dean Prosser points out that a disclaimer may be a desirable and reasonable device where a seller is not sure of the quality of what he is selling and unwilling to assume the responsibility for it and the buyer is willing to take the risk. But Prosser states:

"It is quite another thing, however, to say that the user of a product is bound by a disclaimer which he has never seen; and it is another thing also to say that the consumer who buys at retail is bound by a manufacturer's disclaimer which is handed to him with the product, and to which he has done nothing whatever to accede other than to receive it. In such a case all reality of assent is lacking; and if sellers, in disregard of their sales appeal, are to be permitted to escape liability by adding to the label on the package such words as 'Not Warranted in Any Way,' the developing law could obviously be frustrated." 50 Minn. L. Rev. (1966), 791, 831, 832.

Whether or not this court waits for a case to arise under the Code, the basic decision must still be made, viz.: should products-liability cases be treated as matters

of implied warranty exclusively, or is it properly a matter of tort liability.

"Whether, given enough time—say another decade—the sales law of warranties might have worked out a method of dealing effectively with these problems, or whether, for example, the Uniform Commercial Code might have been amended generally as it has been in four states, must always be a matter of speculation. But in the desperate hours of the fall of the citadel, there was no such time.

"Although the writer was perhaps the first to voice it, the suggestion was sufficiently obvious that all of the trouble lay with the one word 'warranty,' which had been from the outset only a rather transparent device to accomplish the desired result of strict liability. No one disputed that the 'warranty' was a matter of strict liability. No one denied that where there was no privity, liability to the consumer could not sound in contract and must be a matter of tort. Why not, then, talk of the strict liability in tort, a thing familiar enough in the law of animals, abnormally dangerous activities, nuisance, workmen's compensation, libel, misrepresentation, and respondeat superior, and discard the word 'warranty' with all its contract implications?" Prosser, 50 Minn. L. Rev. (1966), 791, 801.

California explicitly abandoned the use of warranty concepts in 1963.[8] *Greenman v. Yuba Power Products, Inc.* (1963), 59 Cal. 2d 57, 377 Pac. 2d 897, 27 Cal. Rptr. 697. Mr. Justice TRAYNOR, speaking for the court, set forth the rule:

". . . A manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being." (p. 62.)

Under this rule ". . . it was sufficient that plaintiff proved that he was injured while using [the product] . . . in a way it was intended to be used as a result of a defect in design and manufacture of which plaintiff was not aware that made the [product] . . . unsafe for its intended use." (p. 64.)

---

[8] *Also see Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N. E. 2d 182.

The approach has been lauded:

". . . This innovation avoids the need for making apologies to warranty doctrine for each abrogation of the privity requirement to permit another, more remote, class of plaintiffs to recover. The plaintiff's status prior to his injury is irrelevant under the new dispensation; he need only be 'a human being,' . . ." Schreiber and Rheingold, *Products Liability*, 4:26, 4:27. Reprinted from 64 Col. L. Rev. (1964), 916.

The respondent, Pioneer, contends that the common law at the time of the adoption of the constitution was the privity rule of *Winterbottom v. Wright, supra,* and as such should not be changed by the court by virtue of the Wisconsin Constitution, art. XIV, sec. 13, which provides:

"Such parts of the common law as are now in force in the territory of Wisconsin, not inconsistent with this constitution, shall be and continue part of the law of this state until altered or suspended by the legislature."

Assuming arguendo that the common law of Wisconsin in 1848 did require privity of contract, this argument was rejected in *State v. Esser* (1962), 16 Wis. 2d 567, 584, 115 N. W. 2d 505, wherein the court stated:

"We conclude that the function of sec. 13, art. XIV, Wis. Const., was to provide for the continuity of the common law into the legal system of the state; expressly made subject to legislative change (in as drastic degree within the proper scope of legislative power as the legislature might see fit) but impliedly subject, because of the historical course of the development of the common law, to the process of continuing evolution under the judicial power."

The court's reasoning is in full accord with that expressed by the United States Supreme Court in *Funk v. United States* (1933), 290 U. S. 371, 383, 54 Sup. Ct. 212, 78 L. Ed. 369:

"It has been said so often as to have become axiomatic that the common law is not immutable but flexible, and by its own principles adapts itself to varying conditions."

In *State v. Esser, supra,* pp. 581, 582, the court, with approval, quoted from the works of Mr. Justice CARDOZO. A portion of that quote is particularly applicable here:

" ' "That court best serves the law which recognizes that the rules of law which grew up in a remote generation may, in the fullness of experience, be found to serve another generation badly, and which discards the old rule when it finds that another rule of law represents what should be according to the established and settled judgment of society, and no considerable property rights have become vested in reliance upon the old rule. It is thus great writers upon the common law have discovered the source and method of its growth, and in its growth found its health and life. It is not and it should not be stationary. Changes of this character should not be left to the legislature." ' "

The respondent also argues that the legislature by enacting sec. 402.318, Stats., has acted in the field and has specifically limited the seller's liability for breach of implied warranty to the buyer's family and guests. The answer to this argument is that the comment to the section provides: ". . . the section is neutral and is not intended to enlarge or restrict the developing case law on whether the seller's warranties, given to his buyer who resells, extend to other persons in the distributive chain." Uniform Commercial Code, 2–318, Comment 3.

The abrogation of the privity requirement is not strictly and exclusively a matter of sales and contract law. When the manufacturer or the seller offers a product for sale which he expects to be used by the consuming public within its intended use and such product is defective and injures the consumer, his liability in tort can be based upon a breach of duty quite apart from contract obligations. In these situations the Uniform Commercial Code is inapplicable.[9]

---

[9] *Henningsen v. Bloomfield Motors, Inc., supra,* and sec. 402A, Restatement, 2 *Torts* 2d, Comment *m,* pp. 355, 356.

We are of the opinion that the rule which requires privity of contract in products-liability cases should not be used to defeat a claim based upon a defective product unreasonably dangerous to a nonprivity user. For products-liability cases we adopt the rule of strict liability in tort as set forth in sec. 402A of Restatement, 2 Torts 2d, pp. 347, 348. The section is as follows:

"Sec. 402A. Special Liability of Seller of Product for Physical Harm to User or Consumer

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

"(a) the seller is engaged in the business of selling such a product, and

"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in subsection (1) applies although

"(a) the seller has exercised all possible care in the preparation and sale of his product, and

"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

This section of Restatement, 2 Torts 2d, is supplemented by several comments that can be helpful in construing the rule when applying it to an individual factual situation. We do not at this time specifically accept or reject any of the comments for the reason that, in the case at hand, the scope of our review should be limited to the sufficiency of the facts stated in the complaint upon challenge by demurrer. However, a few general observations as to the impact of the rule as it applies to the disposition of the case to be tried may be in order because they did play a part in our discussions and reasons for adopting the rule.

The term *strict* liability in tort might be misconstrued and, if so, would be a misnomer. Strict liability does not

make the manufacturer or seller an insurer nor does it impose absolute liability. From the plaintiff's point of view the most beneficial aspect of the rule is that it relieves him of proving specific acts of negligence and protects him from the defenses of notice of breach, disclaimer, and lack of privity in the implied warranty concepts of sales and contracts.

From a reading of the plain language of the rule, the plaintiff must prove (1) that the product was in defective condition when it left the possession or control of the seller, (2) that it was unreasonably dangerous to the user or consumer, (3) that the defect was a cause (a substantial factor) of the plaintiff's injuries or damages, (4) that the seller engaged in the business of selling such product or, put negatively, that this is not an isolated or infrequent transaction not related to the principal business of the seller, and (5) that the product was one which the seller expected to and did reach the user or consumer without substantial change in the condition it was when he sold it.

The defense of contributory negligence is available to the seller. The plaintiff has the duty to use ordinary care to protect himself from known or readily apparent danger. Defenses among others that suggest themselves are that the product must be reasonably used for the purpose for which it was intended; abuse or alteration of the product may relieve or limit liability, some products just naturally wear out in such a manner as to render them unsafe and as to others, the intended use can be coupled with inherent danger—anyone can cut his finger with a sharp knife or puncture it with a fishhook, and teeth can be damaged by the sugar in the consumption of soft drinks.

Another defense that may be available in some jurisdictions so as to bar recovery is assumption of risk. In *McConville v. State Farm Mut. Automobile Ins. Co.* (1962), 15 Wis. 2d 374, 384, 113 N. W. 2d 14, we determined that in host-guest automobile accident cases:

"Conduct which has heretofore been denominated assumption of risk may constitute contributory negligence as well. The unreasonable assumption of risk constitutes negligence."

At this juncture we find no reason why acts or failure on the part of the user or consumer of defective products which constitute a failure to exercise reasonable care for one's own safety and might ordinarily be designated assumption of risk cannot be considered contributory negligence.

An obvious reason why the court, in *McConville,* determined that acts or failures traditionally denominated assumption of risk should be treated as contributory negligence was to extend the benefit of our comparative-negligence statute [10] to the plaintiff.

It might be contended that the strict liability of the seller of a defective product is not negligence and therefore cannot be compared with the contributory negligence of the plaintiff. The liability imposed is not grounded upon a failure to exercise ordinary care with its necessary element of foreseeability; it is much more akin to negligence per se.

Negligence per se was defined in *Osborne v. Montgomery* (1931), 203 Wis. 223, 240, 234 N. W. 372, as follows:

"We come now to a consideration of that class of cases where foreseeability is not an element of negligence,—a more accurate statement would be to that class of cases where the defendant is foreclosed or concluded upon the question of foreseeability. In all those cases where it is said that, the performance of the wrongful act being admitted, the defendant is guilty of negligence as a matter

[10] Sec. 895.045. "Contributory negligence; when bars recovery. Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not as great as the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence attributable to the person recovering."

of law or that the act is negligent *per se,* the case is one which admits of no question as to reasonable anticipation or foreseeability. These cases are those in the main where the act amounts to a violation of a standard of care fixed by statute (ordinance) or previous decision. The employment of a minor child in violation of the statute is an instance of the first kind, and the failure to stop, look, and listen is the most common illustration of the second type. It is apparent that there must always be a causal relation between the act complained of and the injury sustained; otherwise liability does not follow."

Comparison of the failure to exercise ordinary care and negligence per se is so common and widely approved in our jurisdiction as to need no citation.

Strict liability in tort for the sale of a defective product unreasonably dangerous to an intended user or consumer now arises in this state by virtue of a decision of this court. If this same liability were imposed for violation of a statute it is difficult to perceive why we would not consider it negligence per se for the purpose of applying the comparative-negligence statute just as we have done so many times in other cases involving the so-called "safety statutes." Under the definition of negligence per se as set forth in *Osborne, supra,* a safety rule can trace its origin to a court decision as well as a statute. The violation of a safety statute can create a condition that constitutes an unreasonable risk of harm to others. Likewise, a defective product can constitute or create an unreasonable risk of harm to others. If this unreasonable danger is a cause, a substantial factor, in producing the injury complained of, it can be compared with the causal contributory negligence of the plaintiff. While this discussion of contributory negligence, assumption of risk and comparative negligence may be *obiter dicta* because those issues are not before us on this appeal, we deem that a reference to the problem is appropriate as a guide for the trial of this case in the event it is tried upon the theory of special liability of the seller of products for physical harm to user or consumer as set forth herein.

The third cause of action of the plaintiff's complaint is grounded upon a theory of an abolition of the rule of privity of contract in actions for breach of implied warranty. Because we have determined that physically injured users or consumers of unreasonably dangerous defective products should pursue their remedy under the rule of strict liability in tort, we conclude that the third cause of action in the complaint does not state facts sufficient to constitute a cause of action and the order sustaining the demurrer should be affirmed but with leave to plead over.

*By the Court.*—Order affirmed, with leave to the plaintiff to amend the third cause of action of the complaint within twenty days of remittitur. No costs to be taxed on this appeal.

CURRIE, C. J. (*concurring*). I fully concur in the court's opinion. This opinion makes it crystal clear why the rule of strict liability in products-liability cases laid down in sec. 402A of Restatement, 2 Torts 2d, which this court now adopts, *is not a rule of absolute liability.* This is wholly apart from any consideration of such defenses as contributory negligence or assumption of risk.

*Strahlendorf v. Walgreen Co.* (1962), 16 Wis. 2d 421, 114 N. W. 2d 823, did not turn on the issue of privity, the court holding that the toy was safe when properly used. This was the reason why six of the seven members of the court held it was an inappropriate case in which to consider adopting the rule of the Restatement. More than five years were to elapse before a case did present itself in which it was appropriate to consider the issue, and that occurred with the appeal of the instant order.

HALLOWS, J. (*concurring*). In *Strahlendorf v. Walgreen Co.* (1962), 16 Wis. 2d 421, 114 N. W. 2d 823, the writer dissented and advocated the abolition of the requirement of privity of contract in implied warranty

cases. Since then nothing has happened to justify waiting until the present case to find a solution to this controversial problem of product liability. The California case relied upon was decided the same year as *Strahlendorf* and sec. 402A of the Restatement, 2 Torts 2d, now relied upon, was cited in the *Strahlendorf Case*.

I think the majority opinion is unnecessarily misleading in attempting to state the position of the court. The issue is stated in terms of strict liability and is also stated that we adopt the rule of strict liability in tort as set forth in sec. 402A of the Restatement, 2 Torts 2d. I think not. The Restatement is in terms of liability, but if we are to keep the doctrine of comparative negligence, which is one of the bulwarks against strict liability in Wisconsin jurisprudence, our statement of the first step in the solution of product-liability cases must clearly be in terms of negligence and not liability. It is a plainly misleading statement to say we adopt the strict liability rule but we do not mean it.

What we mean is that a seller who meets the conditions of sec. 402A, Restatement, 2 Torts 2d, in Wisconsin is guilty of negligence as a matter of law and such negligence is subject to the ordinary rules of causation and the defense applicable to negligence. While the Restatement, 2 Torts 2d, sec. 402A, imposes a strict or absolute liability regardless of the negligence of the seller, we do not. This same approach and reasoning of providing a solution by favoring our comparative-negligence doctrine by adopting negligence as a matter of law rather than strict liability was used in the dog-bite cases, *Nelson v. Hansen* (1960), 10 Wis. 2d 107, 102 N. W. 2d 251; *Wurtzler v. Miller* (1966), 31 Wis. 2d 310, 143 N. W. 2d 27. I concur on the express ground that the liability rests on negligence.

## In Re Amendment of State Bar Rules.

*February 9, 1968.*

**Dues of judicial members.**

Per Curiam. Original Proceeding for the amendment of State Bar Rule 2, sec. 5.

Pursuant to a petition of the State Bar of Wisconsin this court did, on January 8, 1968, hear a request to amend State Bar rule 2, sec. 5, so as to provide that membership dues of judicial members could be increased to a maximum of thirty dollars per year.

The rule now provides in substance that membership fees for active members shall not exceed thirty dollars per year and for inactive members, including full time judicial officers, shall not exceed ten dollars per year. The active members' maximum membership fee has recently been raised from twenty dollars to thirty dollars per year.

In response to the petition and hearing the court, by order dated February 8, 1968, has amended rule 2, sec. 5 to provide that the annual dues of judicial members may be increased to fifteen dollars per year.

By virtue of rule 2, sec. 3,[1] judges of courts of record not engaged in the practice of law are inactive members. As inactive members judges are not entitled to practice law or hold office or vote in any election in the State Bar. Rule 3, sec. 1 provides that, "Only active members of the State Bar . . . shall be eligible to serve as officers." Rule 4, sec. 3 provides, "No person shall be eligible to serve on the board of governors from any district unless he is an active member . . . ." It does not appear, however, that inactive members are prevented from serving upon the designated standing committees. (See State Bar By-laws, art. IV, sec. 1.)

---

[1] State Bar Rules, 273 Wis. xii.

It is our opinion that in promulgation of the Integrated Bar, and in the formulation and adoption of State Bar rules and State Bar By-laws, it was clearly intended that judges of courts of record should be denied a right to participate in the election of officers and members of the board of governors and, in turn, in the affairs and management of the State Bar. We deem this policy to insure the independence of the Integrated Bar to be wise and reaffirm it.

Because judicial members have restricted rights to participate in the affairs of the State Bar, we believe this distinction should be emphasized by a corresponding differential in the maximum membership fee. It is for these reasons that we have amended rule 2, sec. 5 to provide for a maximum judicial membership fee of fifteen dollars.