Elizabeth M. MOUNTAIN and John P. Mountain, Plaintiffs,

v.

The PROCTER AND GAMBLE COMPA- NY, a foreign corporation, and the Proc- ter and Gamble Distributing Company, a foreign corporation, Defendants.

No. 68–C–249.

United States District Court, E. D. Wisconsin.

May 15, 1970.

Prieve, Gerlach & Meyer, by Herbert A. Eggie, Milwaukee, Wis., for plain- tiffs.

Wickham, Borgelt, Skogstad & Powell, by Paul J. Kraemer, Milwaukee, Wis., for defendants.

## DECISION

MYRON L. GORDON, District Judge.

Following a trial to the court during February, 1970, the court determined that the plaintiff, Mrs. Mountain, suf- fered substantial damages through her use of the defendants' product, Head and Shoulders shampoo. The court fur- ther determined that because of such in- juries, the plaintiff, Mr. Mountain, suf- fered loss of consortium and medical ex- penses.

In the present opinion, the court will resolve the issue of whether the defend- ants should be held liable for such dam- ages. The parties have filed post-trial briefs regarding this issue.

Throughout her life Mrs. Mountain has suffered from atopic dermatitis and

numerous allergies. Among other things, she has suffered allergic responses at various times to vaseline, fingernail polish, coca cola, dogs, cats, lobster, grass, pollen, coffee, and novocaine. Some of these allergies were temporary and brought only mild reactions. Others were more severe.

During 1963–4 Mrs. Mountain suffered from a severe eczema attack. On at least one occasion, she was hospitalized for a toxemic reaction to liver pills. Her skin might be characterized during such times as swollen and reddened, with open sores and itching.

Head and Shoulders shampoo was found in this case to have caused a severe allergic response in Mrs. Mountain. The active ingredient of this shampoo, referred to as ZPT, is a chemical which helps control dandruff conditions. It was ZPT, which caused the allergic response in Mrs. Mountain.

I am satisfied from credible evidence that ZPT under normal use conditions is not a primary irritant. Credible evidence also showed that the defendants made thorough and reasonable tests of Head and Shoulders before marketing it, and again after marketing. A brief history of testing procedures used in this case might be illustrative of this point.

Following its discovery, ZPT was clinically tested, first on animals, then on humans, for effectiveness and safety. Test marketing was then begun in four cities. Although some three and one-half million units were sold, only 16 complaints were made to the defendants. Of the 16 persons involved, seven refused to cooperate in tests and the other nine were patch-tested. The tests proved negative. Thus, before selling their product nationally, the defendants had tested their product and found that it did not cause harm.

In 1963 the product was sold nationally. After an initially large number of complaints, the number of complaints from users has dwindled. However, to the present only 630 complaints have been made by users. Of this 630, only three persons, including the plaintiff, have been found to suffer an allergy causally connected with use of Head and Shoulders. To the date of trial, approximately 225 million units of the shampoo were sold.

Although the plaintiffs have suggested that the verification process used by the defendant was unduly cumbersome, I find as a fact that the defendants' verification process has produced results that are accurate. The plaintiffs have failed to convince me that persons have been discouraged from submitting to verification by the defendants' procedures or that the defendants sought to discourage verification.

From the above-recited facts, the inference must be drawn that only slightly more than one-millionth of one percent of the tubes of defendants' product sold to date has been associated with a verifiable allergic reaction.

The parties are agreed that the tube of Head and Shoulders involved in this case contained no chemicals not contained in every normal tube of Head and Shoulders. They are also agreed that Wisconsin law is controlling on the issue of liability.

## I. STRICT LIABILITY

In Dippel v. Sciano, 37 Wis.2d 443, 459, 155 N.W.2d 55, 63 (1967), the Wisconsin supreme court indicated:

"For products-liability cases we adopt the rule of strict liability in tort as set forth in sec. 402A of Restatement, 2 Torts (2d), pp. 347, 348. * * *"

At page 460, 155 N.W.2d at page 63, of that decision, the court listed the elements of recovery under § 402A:

"From a reading of the plain language of the rule, the plaintiff must prove (1) that the product was in defective condition when it left the possession or control of the seller, (2)

that it was unreasonably dangerous to the user or consumer, (3) that the defect was a cause (a substantial factor) of the plaintiff's injuries or damages, (4) that the seller engaged in the business of selling such product or, put negatively, that this is not an isolated or infrequent transaction not related to the principal business of the seller, and (5) that the product was one which the seller expected to and did reach the user or consumer without substantial change in the condition it was when he sold it."

I find that elements 3, 4 and 5 of a cause of action based upon strict liability have been proved in the present case. The question is whether elements 1 and 2 are present.

The comments to § 402A are helpful in determining whether the defendants' product was in an unreasonably dangerous defective condition. Although the Wisconsin supreme Court did not expressly accept or reject any of the comments, the court noted, at page 459, 155 N.W.2d at page 63:

"This section of Restatement, 2 Torts (2d), is supplemented by several comments that can be helpful in construing the rule when applying it to an individual factual situation."

Comment g makes it clear that a product is only in a defective condition when:

"* * * at the time it leaves the seller's hands [it is] in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him."

Comment i defines "unreasonably dangerous" as:

"* * * dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it * * *"

■ Since there is no danger at all to the ordinary consumer of Head and Shoulders, the defendants would not or-

dinarily be liable under § 402A. I also find that they are not to be held liable to the ordinary consumer for any alleged negligence in the design of their product. This conclusion is further supported by the words of the Wisconsin supreme court at pages 459–460, 155 N.W. 2d at page 63 of the *Dippel* case:

"Strict liability does not make the manufacturer or seller an insurer nor does it impose absolute liability. From the plaintiff's point of view the most beneficial aspect of the rule is that it relieves him of proving specific acts of negligence and protects him from the defenses of notice of breach, disclaimer, and lack of privity in the implied warranty concepts of sales and contracts."

## II. DUTY TO WARN

Nevertheless, the plaintiffs argue that the defendants are negligent for having violated their duty to warn. In Wright v. Carter Products, 244 F.2d 53, 58 (2nd Cir.1957), the court stated:

"It would seem that a manufacturer cannot be required to alter a formula that has proven safe for use by the overwhelming majority of its users, but the standard of care owed by that manufacturer to its ultimate consumers may include a duty to warn those few persons who it knows cannot apply its product without serious injury."

Comment j to § 402A, Restatement, Torts 2d, sets the same standard under the theory of strict liability:

"In order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning, on the container, as to its use. The seller may reasonably assume that those with common allergies * * * will be aware of them * * * Where, however, the product contains an ingredient to which a substantial number of the population are allergic, and the ingredient is one

whose danger is not generally known * * * the seller is required to give warning against it, if he has knowledge, or by the application of reasonable, developed human skill and foresight should have knowledge, of the presence of the ingredient and the danger."

The plaintiffs argue that the defendants should have known of the danger of an allergic response to their product. The defendants conducted thorough tests on animals and repeat closed patch tests on humans. None of these disclosed any reason to suspect that the defendants' product would cause allergic responses in normal use.

The plaintiffs argue that the defendants were negligent in not conducting their tests on groups of persons suffering from atopic allergies or atopic dermatitis. I find no systematic bias in the defendants' testings; in view of the large number of tests, including general test marketing in four cities, I believe that the tests undertaken in this case were reasonable.

■ Even if it could be assumed, however, that the two cases of verified allergic reactions which were discovered before Mrs. Mountain was injured were enough to put the defendants on notice, I find that they owed no duty to warn under the circumstances of this case. Comment j to § 402A states that § 402A only requires a warning when "the product contains an ingredient to which a substantial number of the population are allergic * * *." See also, Prosser on Torts, 3rd Ed., § 97, p. 684. This rule also obtains under warranty and negligence theories of liability. See cases collected at 26 A.L.R.2d 963.

Although the plaintiffs argue that a large number of persons are potentially allergic to the defendants' product, they have failed to convince me as to this claimed fact. Despite some conflict on the precise percentages, credible evidence showed that approximately 20% of the population suffers atopic allergies and approximately 5% suffers atopic eczema or dermatitis. There is no reason to suspect that such persons were not proportionately represented in tests conducted by the defendants of their product or in the total sales to date of approximately 225 million tubes. The three verifiable allergic reactions still represent only a miniscule percentage of the total sales.

Some judges have supported a rule requiring a warning even for a small class of allergic persons. See, for example, Merrill v. Beaute Vues Corporation, 235 F.2d 893, 898–900 (10th Cir. 1956) (Murrah, J., concurring). However, to require a warning under the circumstances of this case would be to make such warnings less effective in all cases. The vast majority of even normally allergic individuals would run a statistically insignificant chance of a reaction; rare individuals like the plaintiff, Mrs. Mountain, who are potentially allergic to almost everything, might be well advised to test almost all products before making intimate bodily use of them.

A further reason for not finding a duty to warn under the circumstances of this case is the fact that credible evidence has indicated that there is no reasonable way of foretelling who will suffer an allergic reaction to the defendants' product. Mrs. Mountain used it several times before developing any reaction to it.

### III. CONCLUSION

Since the plaintiffs have failed to establish that the defendants have committed any breach of duty, I find that the defendants are not liable. It follows that the plaintiffs' complaint must be dismissed.

Now, therefore, it is ordered that the complaint of the plaintiff be and hereby is dismissed upon its merits.