**WISCONSIN ELECTRIC POWER COMPANY, a Wisconsin Corporation, Plaintiff,**

v.

**ZALLEA BROTHERS, INC., a Delaware Corporation, Defendant.**

**Civ. A. No. 73–C–222.**

United States District Court, E. D. Wisconsin.

July 19, 1978.

Jack R. Wiedabach, William P. Croke and Rocke A. Calvelli, Milwaukee, Wis., for plaintiff; Prosser, Wiedabach & Quale, Milwaukee, Wis., of counsel.

## MEMORANDUM AND ORDER

REYNOLDS, Chief Judge.

Before the Court is a motion by the plaintiff, Wisconsin Electric Power Company (hereinafter "WEPCO"), to amend the judgment and findings of fact and conclusions of law issued by the court after a bench trial of the plaintiff's claims. In a Decision and Order reported at 443 F.Supp. 946 (E.D.Wis.1978) the Court found for the defendant, Zallea Brothers, Inc. (hereinafter "Zallea"), on all claims, and WEPCO now seeks to have the findings and conclusions amended so as to entitle WEPCO to judgment against Zallea. For the reasons stated below, WEPCO's motion to amend the findings of fact and conclusions of law is denied.

Since the facts and terminology used in this case were reported in the Court's earlier Decision and Order they will not be discussed in detail here. Briefly, WEPCO purchased from Zallea a number of devices known as expansion joints for absorbing expansions and contractions of underground pipes through which steam is transmitted. After the joints were placed into operation in WEPCO's steam lines seven of the joints developed cracks in the walls of the joints causing steam to escape. Fearing other failures, WEPCO replaced the entire batch of expansion joints with a more reliable type of joints and then sued Zallea for breach of express and implied warranties, for negligence, and for strict liability in tort. These claims were all rejected by the Court after a lengthy and complex trial.

To state the nature of this case generally, the basic problem that arose was that of which party should bear the loss caused by the occurrence of the failures of the bellows expansion joints due to stress corrosion cracking instigated by an unknown and unexpected corrodent or substance in WEPCO's steam lines. The failure to the bellows joints was an unexpected event that

Gilbert W. Church, Richard H. Porter, Milwaukee, Wis., for defendant; Foley & Lardner, Milwaukee, Wis., of counsel.

could not be adequately explained by the parties or their experts at trial even though they had studied the problem for years. The problem of who should bear the loss was further compounded by the fact that there existed no standards for gauging the purity or impurity of the quality of steam generated by electrical utilities, and thus there existed no norms against which to evaluate the chemical treatment given boiler water by WEPCO.

As to the problem of which party should bear the loss—the manufacturer or the buyer—WEPCO asserted that the loss must fall upon Zallea, for as the manufacturer, Zallea allegedly had greater knowledge of how expansion joints would function in steam lines of electric utilities and of what chemicals or corrodents are reasonably likely to be encountered in such steam lines. That greater knowledge allegedly imposed a duty upon Zallea to design its expansion joints in light of the reasonably expected chemicals or corrodents or at least to warn WEPCO that certain reasonably expected chemicals or corrodents may cause damage to the joints while in operation in WEPCO's steam lines. Zallea's failure so to design the joints or so to warn WEPCO allegedly renders it liable for the ultimate failures.

■ In the circumstances of this case, imposition of such liability upon Zallea is unwarranted. In this case the situation is such that there simply were no general standards of steam quality and of levels of chemicals or corrodents which Zallea reasonably could have anticipated. The evidence does not support the conclusion that Zallea did have or should have had knowledge of the likelihood of the joint failures sufficient to justify imposing liability upon Zallea. The evidence supports a finding that WEPCO was in a position to have superior knowledge of the actual quality and contents of its steam, i. e., the levels of chemicals or corrodents in the steam, and to have the expertise and access to knowledge concerning the steam in its pipes. Since there were no general industry standards regarding acceptable steam quality and levels of chemicals or corrodents in light of

which Zallea could have designed the expansion joints or issued warnings, and since WEPCO was in a better position to evaluate its own steam quality and chemical or corrodent levels, the loss for the still unexplained failures must fall upon WEPCO rather than Zallea.

WEPCO has now moved the Court to amend its findings and conclusions in 28 respects so as to entitle WEPCO to judgment in the amount of approximately $800,-000. The Court declines to adopt the 28 proposed amendments for the reason that the Court has not been persuaded that the Court's original findings and conclusions were erroneous. The plaintiff has not presented arguments in light of the evidence and testimony as to each of the 28 proposed amendments; rather, the plaintiff has only argued several of the issues raised at trial. Those issues as now argued by WEPCO may be characterized as follows:

1. WEPCO's assertion that Zallea warranted its expansion joints to function properly in any steam environment that might reasonably be anticipated;

2. WEPCO's assertion that it was relying on Zallea to select a metal for use in WEPCO's steam line;

3. WEPCO's assertion that Zallea is strictly liable in tort for failing to warn WEPCO of the dangerous nature of the expansion joints;

4. WEPCO's assertion that it did not assume the risk of failure of the expansion joints due to stress corrosion cracking; and

5. WEPCO's assertion that the Court erroneously failed to consider the likelihood that the combined effect of annealing the joints and increasing their thickness would have prevented the failures.

These arguments by WEPCO have each been explicitly or implicitly rejected in the Court's earlier Decision and Order. With regard to the first argument, the Court found that no such warranty was given by Zallea. With regard to the second argument, the Court found that WEPCO did not communicate any reliance upon Zallea to Zallea and the circumstances surrounding

the parties' transactions were not such that Zallea should have known that WEPCO may have been relying on it to select an appropriate bellows metal for the steam in WEPCO's pipes. With regard to the third argument, the Court found that Zallea was not aware and could not reasonably be expected to have been aware of the likelihood that the expansion joints would fail in WEPCO's steam lines, and therefore could not have warned WEPCO of any danger. WEPCO was sufficiently aware of the possibility of stress corrosion cracking of expansion joints so as not to require any warning. As to these first three arguments by WEPCO no further discussion is necessary.

■ WEPCO's fourth argument, that WEPCO cannot be said to have assumed the risk of failure of the expansion joints due to stress corrosion cracking, also does not call for amendment of the Court's findings and conclusions. WEPCO correctly points out that its engineers were not aware of the possibility that the joints would fail due to the presence of the unidentified corrodent that did in fact cause the failures. However, the engineers testified at trial that they were aware that bellows-type expansion joints were subject to stress corrosion problems but that the expense of maintaining other more reliable types of expansion joints led them to select the bellows-type despite the known hazard of stress corrosion cracking. Having chosen a less expensive and less reliable type of expansion joint, WEPCO cannot now validly assert that it is entitled to recovery of damages after the hazard of which it was aware occurred.

■ WEPCO also maintains that there is no assumption of risk defense to a strict liability action in the State of Wisconsin, and that Wisconsin instead applies its statutory rule of contributory negligence under which contributory negligence by a plaintiff is a complete bar to recovery only if it is equal to or greater than the negligence of the defendant. See Wis.Stat. 895.045 (1975). However, the similarity of the assumption of risk and contributory negli-

gence concepts in Wisconsin law was indicated by the Wisconsin Supreme Court in *Dippel v. Sciano.* 37 Wis.2d 443, 461, 155 N.W.2d 55, 64 (1967): "At this juncture we find no reason why acts or failure on the part of the user or consumer of defective products which constitute a failure to exercise reasonable care for one's own safety and might ordinarily be designated assumption of risk cannot be considered contributory negligence." In the instant case, WEPCO's choice of the bellows-type expansion joint with knowledge of the possibility of stress corrosion cracking and without having analyzed the contents of its own steam, bars it from recovering under strict liability theory whether the defense is denominated assumption of risk or contributory negligence. The fault lies with WEPCO and not with Zallea, which breached no duty to warn and did not create a defective product.

■ WEPCO's fifth argument in this motion, that the combined effect of annealing and increasing the thickness of the bellows would have prevented the failures, also does not call for amendment of the Court's findings and conclusions. In the earlier Decision and Order in this case, the Court concluded that the expansion joints were not defective due to the failure of Zallea to anneal the joints or to increase the thickness of the metal used in forming the joints. However, even if one assumes that annealing and increasing the thickness of the metal would have had the synergistic effect of preventing the failure that occurred, WEPCO is still not entitled to recover from Zallea, for Zallea was under no obligation either in tort or contract law to take all conceivable steps to prevent failure. As indicated in the original decision in this action, the failure to anneal or increase the thickness of the metal does not render the joints defective within the meaning of the contract or of tort law. As to the contract, the evidence indicated that Zallea's chosen process and design for the joints complied with all applicable standards. As to duty under tort law of strict liability, the Court found that the joints were not defective

and that Zallea breached no duty to warn since WEPCO was cognizant of the possibility of failure of the joints and had greater knowledge of and access to the contents of its steam.

NOW, THEREFORE, IT IS ORDERED that the motion of the plaintiff, the Wisconsin Electric Power Company, to amend the judgment and the findings of fact and conclusions of law of this Court's Decision and Order of February 6, 1978, be and it hereby is denied.