Gary **BRINKMAN** and Carol Brinkman, Plaintiffs,

v.

**INTERNATIONAL TRUCK AND ENGINE CORPORATION, and Navistar International Corporation, Defendants,**

and

**Blue Cross Blue Shield of Wisconsin, Intervening Party.**

No. 04–C–0001–C.

United States District Court, W.D. Wisconsin.

Dec. 30, 2004.

Dwight W. James, Timothy J. Schumann, for Plaintiffs.

Webster A. Hart, Webster A. Hart, Herrick & Hart, S.C., Eau Claire, WI, for Defendants.

## OPINION AND ORDER

CRABB, District Judge.

This is a civil action in which plaintiffs Gary Brinkman and Carol Brinkman are suing defendants International Truck and Engine Corporation and Navistar International Corporation for strict product liability (failure to warn and defective design), for breach of an implied warranty and negligence. Plaintiff Carol Brinkman is asserting a claim for loss of consortium. The case arises out of an accident involving a borrowed International 674 tractor that plaintiff Gary Brinkman was using to mow a field. Unexpectedly, fuel began to shoot from the tank like a geyser, covering plaintiff and then catching on fire, causing him severe burns.

The case is before the court on defendants' motion for partial summary judgment. Defendants seek dismissal of plaintiffs' strict product liability claims and their claim for breach of implied warranty.

Plaintiffs have not denied defendants' assertion that any claims for breach of implied warranty are untimely (because the statute of limitations expired on such claims more than 13 years ago) and also inappropriate in light of plaintiffs' tort claims. *Austin v. Ford Motor Co.*, 86 Wis.2d 628, 644–46, 273 N.W.2d 233 (1979) ("A breach of warranty theory is encumbered with the ancient baggage of contract actions and should not be employed where the recovery is one for tort."). Therefore, I will grant defendants' motion for partial summary judgment on plaintiffs' breach of warranty claim.

As to the strict products liability claim, I conclude that plaintiffs cannot proceed on this claim because the tractor that caused

plaintiff Gary Brinkman's injuries had been modified substantially and materially after it was manufactured and before plaintiff was injured. To prevail on such a claim, plaintiffs would have to show that the allegedly defective product reached the user without substantial change in the condition in which it was sold.

From the parties' proposed findings of fact, I find that the following facts are both undisputed and material.

## UNDISPUTED FACTS

Plaintiffs Gary and Carol Brinkman are Wisconsin residents living in Cassville, Wisconsin. Defendant International Truck and Engine Corporation is a Delaware corporation with its principal place of business in Chicago, Illinois. (The parties agree that Navistar International Corporation is not a proper defendant in this case; its name will be removed from the caption and all future references to "defendant" will be to defendant International Truck and Engine Corporation.)

On or about July 2, 2002, plaintiff Gary Brinkman was using an International tractor model 674 that was manufactured in 1975. Defendant designed, manufactured and sold the tractor. Plaintiff had been mowing for more than four hours when he heard sounds coming from the fuel tank. He tried to turn the engine off but was unsuccessful. Pressure had built up in the fuel tank, causing the fuel to come out of the tank in a geyser, soaking plaintiff. The fuel caught fire immediately, setting plaintiff and his clothing on fire. Plaintiff was burned on his legs, back, arm and other parts of his body.

For "geysering" to occur, pressure in the fuel tank must be released suddenly after the fuel has been heated above its boiling point and sufficient pressure has built up in the tank to suppress the boiling. At some time after the tractor was manu-factured, someone had placed a screw in the fuel tank vent opening, which blocked the opening. See Nelson Aff., dkt. # 25, photograph 2–11A, attached to this opinion.

It is possible that at some time the tractor's exhaust system was modified from a vertical exhaust to an underslung exhaust because a hole in the hood sheet has been patched, suggesting that the tractor was designed for a vertical exhaust that would have required a hole in the hood sheet. The alternative underslung exhaust system would not have required a hole in the hood sheet but would have contained a breather tube assembly. The tractor shows no evidence of ever having had such an assembly. If the tractor had had a properly installed underslung exhaust, the exhaust would not have provided a source of heat to raise the temperature of the fuel in the tank. Also, the underslung exhaust on the tractor did not have the tail pipe extension designed for underslung exhaust systems on the 674 tractor and was not clamped as it would have been had it been installed at the factory. Had the tail pipe been present, it would have directed hot exhaust gases toward the rear, away from the fuel tank. Without it, the heated exhaust gases could reach the tank and heat the fuel.

The lack of a breather tube assembly and a tail pipe extension and the presence of a screw blocking the tank vent opening affected the temperature of the fuel and the pressure inside the fuel tank.

## OPINION

The primary issue to be decided is whether the International 674 tractor was in the condition in which it left defendant's factory when it malfunctioned and caused plaintiff's injuries or whether it had been the subject of substantial and material

changes in the interim. In cases of strict liability, Wisconsin follows the *Restatement (Second) of Torts* § 402A, which provides:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

In *Dippel v. Sciano*, 37 Wis.2d 443, 450–51, 155 N.W.2d 55 (1967), the state supreme court adopted the Restatement's rule of strict products liability, holding that "[T]he seller is in the paramount position to distribute the costs of the risks created by the defective product he is selling." He may pass the cost on to the consumer or protect himself by purchasing insurance and may initiate inspection and quality control measures. *Id.* In *Glassey v. Continental Insurance Co.*, 176 Wis.2d 587, 600, 500 N.W.2d 295 (1993), the court held that it is the plaintiffs' burden to prove that the allegedly defective product reached the user without substantial change in its condition since the time of sale, explaining that "[t]he party in the best position to pay for the cost of changes to products is the party who makes the changes." *Id.* at 603, 500 N.W.2d at 302. "Unlike negligent tort-feasors whose liability is based on [their] failure to act, liability of strict products liability tortfeasors arise[s] not from their conduct, but from the nature or condition of the product. Manufacturers or sellers cannot be held strictly liable if the condition of the product substantially changes in a way that is material to the accident after the product leaves their control." *Id.* at 600–01, 500 N.W.2d at 301.

Plaintiffs acknowledge that they have the burden of proving that the tractor reached plaintiff without substantial change. However, they contend that summary judgment is not proper because some of the alleged changes to the tractor are disputed and as to the remainder, defendant cannot show that they were substantial and material.

Although defendant believes that the tractor was built with a vertical exhaust that was later changed to an underslung exhaust that was installed improperly, it is not basing its motion for summary judgment on this alleged change. Instead, it focuses solely on the the absence of a tail pipe extension for the underslung exhaust and the insertion of a screw into the fuel tank vent. (The parties have discussed three other alleged changes, including the lack of a tank breather tube assembly for the underslung exhaust. They agree that the breather tube assembly was missing on July 2, 2002 but for the purposes of this motion, defendant does not characterize the absence of the assembly as a significant change. Also, defendant is not arguing that either the crack in the rear portion of the exhaust manifold or the installation of an offmarket 12 volt radio is a material change. Although defendant believes that one of these changes provided the ignition that led to the fire, it is confining its argument to the two changes that in its opinion are undisputed and that allowed the fuel geysering to occur.)

Plaintiffs do not deny that a screw had been inserted into the fuel tank vent on the 674 tractor or that such a modification would contribute to the gas geysering that plaintiff observed. Their own expert agrees that the design of the tractor was such·that "the placement of an underslung exhaust without an appropriately vented cap or otherwise appropriately vented tank creates a condition in which gasoline would boil, pressurize and eventually geyser." Goodney Aff., dkt. # 32, at 4. However, he adds, "the design of the breather tube assembly for the underslung exhaust places the vent closer to the ground and the tube assembly would be susceptible to plugging from natural environmental causes and would easily be damaged resulting in the same effect as the plugging of the vent outlet of the tank." Id. at 3. In other words, he is saying that an underslung exhaust must have a vented tank and the one on the tractor plaintiff was using did not have a vented tank (because someone ·had inserted a screw closing off the vent) but this change is immaterial and insubstantial because the design of the tractor was defective and would have led to the same accident even if the vent outlet had not been plugged by the screw.

■ As defendant points out, plaintiffs' expert provides no support for his opinion that the screw inserted into the vent outlet was not a substantial or material change in the condition of the exhaust system of the tractor. His theory that environmental materials would plug the vent on the breathing tube assembly is only a theory. He does not refer to any studies he or anyone else has done to show that in normal use the venting system would become plugged with environmental materials or that if such plugging occurred it would defeat the venting sufficiently to allow pressure to build to the point at which it would suppress the boiling of the fuel.

Indeed, it is irrelevant that the design of the breather tube assembly would place the vent closer to the ground where it could be plugged by environmental materials because it is undisputed that the tractor had no breather tube assembly when the accident occurred. One would think that if the theory propounded by plaintiffs' expert is correct, defendant's tractors would have caught on fire with some frequency. Plaintiffs offer no proof that they have. I conclude that plaintiffs' expert's opinion does not meet the standards for admissibility set out in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Plaintiffs have not shown what reasoning or methodology underlies the expert opinion, making it impossible to decide whether it is scientifically valid and can properly be applied to the facts in dispute. Id. at 592–93, 113 S.Ct. 2786. They have not shown that their expert's theory can be or has been tested or that it has been subjected to peer review or publication. Id. at 593, 113 S.Ct. 2786.

■ Although the insertion of the screw is a substantial and material change in the tractor by itself, the lack of a proper tail pipe is another. Plaintiffs do not deny that the tail pipe was missing at the time of the accident but speculate that it might have fallen off when "the tractor was retrieved from being stuck in the mud on July 2, 2002." Plts.' Resp. to Dft.'s PFOF, dkt. # 32, ¶ 16. Speculation is no substitute for evidence. Without evidence that the tractor had a proper tail pipe when Gary Brinkman borrowed it, plaintiffs have no basis on which to argue to a jury that the tractor reached its user without any substantial change. I conclude therefore that defendant is entitled to partial summary judgment on plaintiffs' strict products liability claims of defective design·and failure to warn.

## ORDER

IT IS ORDERED that defendant International Truck and Engine Corporation's motion for partial summary judgment with respect to plaintiffs Gary Brinkman's and Carol Brinkman's claims of strict products liability and breach of implied warranty is GRANTED; FURTHER, IT IS ORDERED that defendant Navistar International Corporation is DISMISSED from this suit by agreement of the parties.