CITY OF FRANKLIN and others, plaintiffs and Respondents, v. BADGER FORD TRUCK SALES, INC., Defendant and Respondent: FORD MOTOR CAR COMPANY and another, Defendants and Appellants.*

*No. 198. Argued April 30, 1973.—Decided June 5, 1973.*
(Also reported in 207 N. W. 2d 866.)

* Motion for rehearing denied, with costs, on September 10, 1973.

642

644

For appellant Ford Motor Car Company there were briefs by *Merten, Connell & Sisolak* of Milwaukee, and oral argument by *Walter L. Merten.*

For appellant Gunite Division of Kelsey Hayes Company there was a brief and oral argument by *Walter Eugene Brown* of Milwaukee.

For plaintiffs-respondents there was a brief by *Gibbs, Roper & Fifield* and *John R. Hoaglund, Jr.,* all of Milwaukee, and oral argument by *Mr. Hoaglund.*

For defendant-respondent there was a brief by *Kivett & Kasdorf,* attorneys and *James P. Reardon* of counsel, all of Milwaukee, and oral argument by *Mr. Reardon.*

ROBERT W. HANSEN, J.  The municipality (Franklin) sued the sales company (Badger), the chassis maker (Ford), and the wheel maker (Gunite), alleging each liable under products liability [1] for the sale to the city

[1] *See:* Sec. 402A of Restatement, 2 *Torts* 2d, pages 347, 348, stating: "**Special Liability of Seller of Product for Physical Harm to User or Consumer**

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

"(a) the seller is engaged in the business of selling such a product, and

"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

of a fire truck chassis with a defective wheel. The fire truck was damaged when it tipped over while negotiating a turn in responding to a fire call.

*Cause of accident.* Did the wheel fail because the truck tipped over? Or did the truck tip over because the wheel failed? The affirmative answers of the jury as to defective construction of the wheel and causal connection between defect and accident [2] answer that inquiry. There is expert and lay testimony in the record to support the jury finding that the cause of the accident was the defective construction of the wheel. The dictionary definition of "defective," as here used is: ". . . wanting in something essential: falling below an accepted standard in regularity and soundness of form or structure . . ." [3] Such want of something necessary for completeness is here not a matter of supplying a wheel that did not conform to the city's specifications in any obvious or apparent way. Gunite manufactured and Ford attached to the chassis and Badger furnished a wheel that was designed and built by Gunite to meet the specifications as to weight load. The jury's verdict compels the conclusion that the

---

"(2) The rule stated in Subsection (1) applies although

"(a) the seller has exercised all possible care in the preparation and sale of his product, and

"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller." (Adopted as the law in Wisconsin in *Dippel v. Sciano* (1967), 37 Wis. 2d 443, 155 N. W. 2d 55.)

[2] The special verdict used in this case, in pertinent part, reads as follows:

"*First question:* Was the wheel in question, when it was delivered to W. S. Darley Company, constructed defectively so as to be unreasonably dangerous to a prospective user?

"*Second question:* If you have answered 'Yes' to Question No. 1, then answer this question; otherwise do not answer it:

"Was such defective construction a cause of the accident in question?"

[3] Webster's, *New International Dictionary* (3d ed., unabridged), page 591.

actual wheel furnished was defectively constructed, meaning that it had a defect or imperfection so that, while the wheel appeared to meet the specifications, it in fact did not do so.

*Basis of liability.* The case against all three defendants went to the jury on the basis of strict liability. Ford and Gunite contend that they were manufacturers of component parts and, as such, were not subject to the rule of strict liability. Some states hold component manufacturers and suppliers subject to strict liability; [4] some do not.[5] Where there is no change in the component part itself, but it is merely incorporated into something larger, and where the cause of harm or injury is found, as here, to be a defect in the component part, we hold that, as to the ultimate user or consumer, the strict liability standard applies to the maker and supplier of the defective component part. Where the component part is subject to further processing or substantial change, or where the causing of injury is not directly attributable to defective construction of the component part, the result might be different. We agree with the comment: ". . . The question is essentially one of whether the responsibility for discovery and prevention of the dangerous defect is shifted to the intermediate party who is to make the changes. . . ." [6] In the case before us, we do not see

[4] *See: Burbage v. Boiler Engineering & Supply Co.* (1969), 433 Pa. 319, 249 Atl. 2d 563; *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N. E. 2d 182; *Deveny v. Rheem Mfg. Co.* (2d Cir. 1963), 319 Fed. 2d 124; *Putman v. Erie City Mfg. Co.* (5th Cir. 1964), 338 Fed. 2d 911.

[5] *See: Pabon v. Hackensack Auto Sales, Inc.* (1960), 63 N. J. Super. 476, 164 Atl. 2d 773; *Goldberg v. Kollsman Instrument Corp.* (1963), 12 N. Y. 2d 432, 240 N. Y. Supp. 2d 592, 191 N. E. 2d 81.

[6] Restatement, 2 *Torts* 2d, *supra*, page 357. *See also:* Restatement, 2 Torts 2d, *supra*, page 358, stating:

"*q. Component parts.* The same problem [referring to products requiring further processing] arises in cases of the sale of a com-

responsibility for the defective construction of the wheel shifting from the maker of the wheel or from the assembler of wheel and chassis so as to make only the seller, who was in no position to detect the hidden defect, strictly liable.[7]

*Form of verdict.* The special verdict here inquired as to whether the wheel in question was constructed defectively and, if so, whether such defective construction was a cause of the accident.[8] It also inquired as to whether the city was negligent with respect to maintenance of the wheel or operation of the vehicle and, if so,

---

ponent part of a product to be assembled by another, as for example a tire to be placed on a new automobile, a brake cylinder for the same purpose, or an instrument for the panel of an airplane. Again the question arises, whether the responsibility is not shifted to the assembler. It is no doubt to be expected that where there is no change in the component part itself, but it is merely incorporated into something larger, the strict liability will be found to carry through to the ultimate user or consumer. But in the absence of a sufficient number of decisions on the matter to justify a conclusion, the Institute expresses no opinion on the matter."

[7] In *Howes v. Hansen* (1972), 56 Wis. 2d 247, 201 N. W. 2d 825, in extending strict liability protection beyond a user or consumer to a bystander, this court stated one of the reasons for the strict liability concept was stated in *Dippel v. Sciano, supra,* page 451, to be ". . . the manufacturer has the greatest ability to control the risk created by his product since he may initiate or adopt inspection and quality control measures thereby preventing defective products. . . ." *See also:* 2 Frumer and Friedman, *Products Liability,* pp. 3–151–152, sec. 16.04 [2], stating: "There seems to be no good reason why, if the lack of privity is not a consideration . . . the part manufacturer as well as the assembler should not be liable to the injured person. . . . While it may be true that the assembler is in a better position to distribute the risk in a particular case, and will ordinarily be the supplier to whom the injured person will look for redress, the part manufacturer did, after all, supply a defective product."

[8] *See:* Footnote 2.

whether such negligence was a cause of the accident.[9] If all of these four questions were answered in the affirmative, the verdict required the jury, taking 100 percent as a total, to determine what percentage of negligence was to be attributed (1) to the defective condition of the wheel, and (2) to the city.[10]

With the jury finding that the city was negligent in maintenance of the wheel but such negligence was not causally connected with the accident, the city's negligence drops out of the case. Even if the jury had found the city's negligence causal, no problem would have been presented in the application of the verdict to the case. The comparative negligence question would have answered what percentage of negligence was to be attributed to the city and what percentage to the defend-

[9] The special verdict in this case, as to negligence on the part of the city, read as follows:

*"Third question:* Was the plaintiff, the City of Franklin, negligent with respect to

"(a) The maintenance of the wheel?

"(b) The operation of the vehicle?

*"Fourth question:* If you have answered 'Yes' to any subdivision of Question No. 3, then answer the corresponding subdivision of this question:

"Was such negligence on the part of the plaintiff, The City of Franklin, a cause of the accident with respect to

"(a) The maintenance of the wheel?

"(b) The operation of the vehicle?"

[10] The special verdict, as to comparative causal negligence of the city and the defendants, reads as follows:

*"Fifth question:* If you have answered both Question No. 1 and Question No. 2 'Yes,' then such defect in construction constitutes causal negligence. If you have answered 'Yes'· to Question No. 2 and 'Yes' to either or both subdivisions of Question No. 4, then answer this question; otherwise do not answer it:

"Taking 100 percent as a total, what percentage of negligence do you attribute to

"(a) The defective condition of the wheel?

"(b) The plaintiff, The City of Franklin?"

ants. The problem comes, in a multiple defendant case, that no similar allocation of comparative negligence was included in the verdict as to each of the defendants. From the standpoint of the plaintiff, it is enough that, under strict liability and without regard to the exercise of all possible care, the seller, assembler and maker are held liable to it for the defective construction of the wheel.[11] However, as between multiple defendants, as to their right to contribution from any one of the others, it is not enough. On the finding that the defective wheel caused the accident, the trial court found all three defendants liable to the plaintiff. Left unanswered and unanswerable was, as between these multiple defendants, what percentage of the judgment was to be allocated to each in determining the right to contribution between them.

The special verdict used in this case follows closely the verdict suggested in Wis J I—Civil, Part II, 3290, Strict Liability: Suggested Special Verdict. It would have been complete if only one defendant had been involved. However, as the comment to 3290 indicates, problems can arise in strict liability cases where multiple defendants are involved.[12] In the case before us, with strict liability

---

[11] *See: Dippel v. Sciano, supra*, at page 460, stating:

"From a reading of the plain language of the rule, the plaintiff must prove (1) that the product was in defective condition when it left the possession or control of the seller, (2) that it was unreasonably dangerous to the user or consumer, (3) that the defect was a cause (a substantial factor) of the plaintiff's injuries or damages, (4) that the seller engaged in the business of selling such product or, put negatively, that this is not an isolated or infrequent transaction not related to the principal business of the seller, and (5) that the product was one which the seller expected to and did reach the user or consumer without substantial change in the condition it was when he sold it." The evidence as to these elements is sufficient to support the jury's verdict in favor of the city.

[12] Wis J I—Civil, Part II, 3290, Strict Liability: Suggested Special Verdict, Comment, stating:

imposed upon seller, chassis assembler and wheel maker, only a separate inquiry, as to each defendant in the chain of distribution, establishes the basis for an application of the comparative negligence principle to the liability of the defendants, each to the other, for contribution. And it is not only between plaintiff and defendant, but also between multiple defendants on the issue of contribution, that the comparative negligence concept applies in products liability cases.[13] As in actions based on negligence, the applicability of comparative negligence requires in products liability cases, as was done here, a comparison of the negligence of the plaintiff and defendant. Where multiple defendants are involved in a products liability case, it is also necessary to inquire, as was not done here, into the comparative negligence of the individual defendants.

We hold that the two questions in the verdict, *i.e.,* (1) as to defective construction of the wheel, and (2) as to causal connection of defect with accident, were not sufficient in a products liability case with multiple de-

"The verdict makes only reference to a seller. If the facts warrant it the inquiry could be directed to a manufacturer, wholesaler, jobber or retailer. . . .

"If more than one defendant is charged with strict liability, the verdict can be amplified to accommodate it to the situation and the multiple comparative negligence would be employed as in other negligence cases."

[13] *See: Dippel v. Sciano, supra,* at page 461, the court set forth (*fn.* 10) the comparative negligence statute, sec. 895.045, Stats., and, at page 462 stated: "Comparison of the failure to exercise ordinary care and negligence per se is so common and widely approved in our jurisdiction as to need no citation." *See also:* Concurring opinion, Mr. Justice HALLOWS, *Dippel v. Sciano, supra,* at page 464 stating: "What we mean is that a seller who meets the conditions of sec. 402A, Restatement, 2 *Torts* 2d, in Wisconsin is guilty of negligence as a matter of law and such negligence is subject to the ordinary rules of causation and the defense applicable to negligence. . . ." (Concurring opinion cited and quoted as explaining *Dippel,* in *Howes v. Hansen, supra,* at page 253.)

fendants involved on the issue of contribution between them. The failure to submit a question as to the comparative negligence of the individual defendants, on the issue of contribution between them, renders the verdict incomplete.[14] The incompleteness of the verdict leaves no way in which, on the issue of contribution, the negligence of the seller, the chassis maker and the wheel maker can be compared. While under *Howes*,[15] each of the three defendants is guilty of negligence as a matter of law towards the plaintiff, the applicability of contribution,[16] not indemnity,[17] between these multiple defend-

[14] *See:* Callaghan's, *5 Wisconsin Pleading and Practice* (1973 Cumulative Supplement, page 11), stating: "Where the question of contribution among the tort-feasors is involved, it is important that specific questions as to the proportionate causal negligence attributable to each defendant be submitted."

[15] *Howes v. Hansen, supra* (footnote 7).

[16] *Gies v. Nissen Corp.* (1973), 57 Wis. 2d 371, 386, 204 N. W. 2d 519, in a case of injury on a trampoline claiming negligence against college and gym instructor and products liability against seller and manufacturer, this court stated: "Thus, under *Dippel, supra,* the negligence of the seller and the plaintiff can be compared. There is no reason why the negligence of the seller and an alleged joint tort-feasor cannot be compared.

"This court, in *Bielski v. Schulze* (1962), 16 Wis. 2d 1, 114 N. W. 2d 105, adopted comparative negligence as the sole measure of contribution between co-tort-feasors."

[17] *Id.* at page 386, this court stated: "The granting of indemnity in any situation represents a judicial choice of policy. *Jacobs v. General Accident Fire & Life Assur. Corp.* (1961), 14 Wis. 2d 1, 11, 109 N. W. 2d 462. . . . This court in *Pachowitz v. Milwaukee & Suburban Transport Corp.* (1972), 56 Wis. 2d 383, 386, 202 N. W. 2d 268, in rejecting a rule that would have permitted one 'passively' negligent to obtain indemnity from one 'actively' negligent stated:

" 'Such an all-or-nothing result between negligent co-tort-feasors would be contrary to the Wisconsin concept of imposing liability and awarding recovery in proportion to the percentage of causal negligence attributable to each of the co-tort-feasors. . . .'

"Under the allegations of the appellants' cross-complaint, appellants are not entitled to indemnification from the seller, Burghardt. Their cause of action was one for contribution."

ants, required a jury finding as to the percentage of negligence attributable to each individual defendant.[18] For completeness of verdict, it was required here that the jury, if it answered Questions 1 and 2 (as it did) affirmatively, also be required to answer: "Taking 100 percent as a total, what percentage of negligence do you attribute to (a) defendant, Badger Ford Truck Sales, Inc., (b) defendant, Ford Motor Car Company, (c) defendant, Gunite Division of Kelsey Hayes Company." All are negligent as a matter of law as to the plaintiff, but only such jury apportionment of comparative negligence can provide the basis for contribution between them.

*Exclusion of testimony.*

*Rulings on evidence.* Defendant wheel maker, Gunite, seeks review of three trial court rulings on evidence. The first relates to Gunite trial counsel asking whether Gunite was "still making wheels with that particular mix." Objection on the ground of immateriality was sustained. No offer of proof was made by Gunite counsel. Gunite counsel also sought to ask how many tons of

[18] *Jacobs v. General Accident Fire & Life Assur. Corp., supra,* at page 11, this court stating: "It should be noted that much of the law of indemnity was created by the courts in jurisdictions where contribution between tort-feasors was not allowed even in favor of negligent tort-feasors. It has been suggested that in such jurisdictions the courts may have been motivated more favorably toward indemnity than they would have been if contribution had been available so that the burden could be distributed rather than completely shifted." *See also: Pachowitz v. Milwaukee & Suburban Transport Co., supra,* at pages 387, 388, this court stating: "The full commitment of *Bielski* to contribution between joint tort-feasors on a comparative-negligence basis is clear. . . . Rejecting the 50–50 basis for contribution between joint tort-feasors, this court said in *Bielski:* '. . . It is difficult to justify, either on a layman's sense of justice or on natural justice, why a joint tort-feasor . . . who is found five percent causally negligent should be required to pay 50 percent of the loss by way of reimbursement to the co-tort-feasor who is 95 percent negligent.'" *See also: Bielski v. Schulze* (1962), 16 Wis. 2d 1, 114 N. W. 2d 105.

material have been carried over United States highways "on wheels just like this." Objection on the ground of immateriality was sustained. No offer of proof was made. An offer of proof is necessary to preserve an alleged trial court error in excluding evidence.[19]

During the trial Gunite counsel sought to introduce testimony as to whether or not any of the other 79 to 99 wheels made by Gunite out of the same "heat" or batch of metals had failed. The obvious and stated purpose was to show that such wheels, presumably having the same carbon content and general composition as the wheel here involved, had not turned out to be "defective wheels because of the absence of carbon." The trial court upheld the city's objection, stating, while the testimony was relevant, it would raise too many side issues as to where such other wheels were sold and how they were used. Evidence that like products were free from, or were subject to, defective or injurious condition is generally admissible.[20] But considerable discretion is "necessarily vested" in trial judges on the question of whether introduction of such evidence would involve undue distraction, undue consumption of time or undue introduction

[19] *Hales Corners Savings & Loan Asso. v. Kohlmetz* (1967), 36 Wis. 2d 627, 633, 634, 154 N. W. 2d 329; *Rausch v. Buisse* (1966), 33 Wis. 2d 154, 167, 146 N. W. 2d 801; *Plainse v. Engle* (1953), 262 Wis. 506, 520, 56 N. W. 2d 89, 57 N. W. 2d 586.

[20] *Netzel v. State Sand & Gravel Co.* (1971), 51 Wis. 2d 1, 9, 186 N. W. 2d 258, quoting 1 Jones, *Evidence* (5th ed.), p. 323, sec. 185, stating: "Evidence of other accidents or similar occurrences . . . under similar conditions and circumstances may be admissible to show the probability of the defect in question . . . ." *See also:* Annot. (1972), 42 A. L. R. 3d 780, *Products Liability: Admissibility of evidence of other accidents to prove hazardous nature of product;* Annot. (1940), 127 A. L. R. 1194, *Admissibility, in action against manufacturer . . . of evidence that like products were free from, or were subject to, defective or injurious conditions.*

of entirely collateral issues.[21] On the facts here, we find no abuse of discretion by the trial court.

*Conclusion.*

From the above reasoning and conclusions, it necessarily follows that: (1) The judgment awarding damages to the plaintiff (city of Franklin) against the three defendants (Badger, Ford and Gunite) arising from the accident caused by the defective wheel be affirmed; (2) The trial court decision disallowing the plaintiff's claim to interest from the date of filing the complaint is affirmed, since the amount of damages payable by individual defendants was not fixed or determinable; (3) The judgment of the trial court, awarding Badger indemnity on its cross complaint against Ford and Gunite, be set aside, the basis for reimbursement between co-tortfeasors being contribution, not indemnity; (4) A new trial is ordered, limited to determining, for purposes of contribution, the comparison of negligence as between each of the individual defendants.

*By the Court.*—Judgments affirmed in part, reversed in part, and cause remanded for a new trial not inconsistent with this opinion.

---

[21] *Netzel v. State Sand & Gravel Co., supra,* at page 9, quoting 1 Jones, *Evidence, supra,* at page 324, stating: "Since evidence of other similar conditions or occurrences under similar circumstances involves proof of collateral matters, a good deal of discretion is necessarily vested in the trial judge on the question of whether the evidence should be admitted. The usual considerations of undue distraction or prejudice, surprise, or undue consumption of time are inherent. . . ." *See also: Brown v. Appleton Masonic Temple Asso.* (1943), 243 Wis. 147, 9 N. W. 2d 637.