**TWIN DISC, INCORPORATED, a Wisconsin corporation of Racine, Wisconsin, Plaintiff,**

v.

**BIG BUD TRACTOR, INCORPORATED, a Montana corporation of Havre, Montana, Defendant and Third-Party Plaintiff,**

v.

**GRAD–LINE, INCORPORATED, a Washington corporation of Woodenville, Washington, Third-Party Defendant.**

**Civ. A. No. 80–C–643.**

United States District Court, E.D. Wisconsin.

March 16, 1984.

---

William J. French, Gibbs, Roper, Loots & Williams, Milwaukee, Wis., for plaintiff.

Michael H. Schaalman, Quarles & Brady, Milwaukee, Wis., for defendant and third-party plaintiff.

L. William Staudenmaier, Cook & Franke S.C., Milwaukee, Wis., for third-party defendant.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

This case comes before the Court on consideration of the "Report and Recommendation of Special Master Dated February 16, 1984." This final report of Special Master Ellis R. Herbon contains his recommendations for resolving the outstanding discovery, evidentiary, and summary judgment motions. The report also describes the issues involved, lists the witnesses to be called at trial, and proposes limits on the time required for trial. Objections to these recommendations were heard in oral argument on February 24, 1984. This decision disposes of the outstanding motions and prepares the case for trial on April 3, 1984.

## I. FACTS

The plaintiff Twin Disc, Incorporated ("Twin Disc"), manufactures, distributes, and sells, among other items, transmission equipment which function as component parts for large farm tractors. Twin Disc is a Wisconsin corporation. Defendant Big Bud Tractor, Incorporated ("Big Bud"), a Montana corporation, manufactures, dis-

tributes, and sells large farm tractors which have incorporated power transmission equipment manufactured by Twin Disc. Third-party defendant Grad-Line, Incorporated ("Grad-Line"), is a Washington corporation that manufactured and supplied component parts to Twin Disc for inclusion in the transmission systems sold to Big Bud. This court has jurisdiction under 28 U.S.C. § 1332(a), there being diversity of citizenship among the parties and the requisite amount in controversy.

In the fall of 1976, Big Bud and Twin Disc began discussions regarding Big Bud's plan to manufacture large agricultural tractors with power shift transmissions. During 1977, these parties held further negotiations to arrange for Twin Disc to manufacture and supply a power shift transmission for Big Bud to use in its new tractor. Beginning in October 1977, and continuing during 1978, 1979, and part of 1980, Big Bud sent purchase orders to Twin Disc for the manufacture and delivery of transmission equipment. The power shift transmission units ordered include a computer component part called a controller, which Twin Disc purchased from Grad-Line. Transmission units shipped to Big Bud in fulfillment of the purchase orders were accompanied by an invoice containing "STANDARD TERMS OF ORDER ACCEPTANCE." These Twin Disc order acknowledgment forms purported to create an express, limited warranty of workmanship and materials; they also purported to disclaim all other express and implied warranties and to limit Big Bud's remedies to the repair or replacement of the defective product.

Beginning in November 1978, many of the transmission units, including the controllers, started to malfunction. Counsel for Big Bud informed the Court during oral argument that electrical signals from other parts of the tractor, such as the radio, would cause the transmission to shift gears unexpectedly. Big Bud, Twin Disc, and Grad-Line worked together to make the transmission shift controller reliable and available for delivery.

Ultimately, for reasons which are vigorously disputed, Big Bud was unable to bring its new agricultural tractor to market in a timely fashion and failed to meet its sales and marketing projections. An inventory backlog developed, manufacturing was halted for a time, and finally on July 13, 1982, the company filed a voluntary petition in bankruptcy.

## II. PLEADINGS

This lawsuit originated on July 18, 1980, when Twin Disc filed an action against Big Bud to recover the price of power transmission equipment sold and delivered to Big Bud under its contract with Twin Disc. The case began as an action on an account totalling approximately one million dollars.

On September 16, 1980, Big Bud took the offensive. It answered the complaint and asserted five counterclaims demanding in excess of fifty-three million dollars in damages. Big Bud's first counterclaim alleges that the products supplied by Twin Disc failed to meet express warranties created by sample, express warranties of workmanship and materials, and implied warranties of merchantability and fitness for a particular purpose.

The second counterclaim sounds in tort law, and this claim will be dismissed. It alleges that Twin Disc was negligent in numerous respects, including its failure to properly design and construct the transmission units, its failure to adequately test and inspect those units, and its failure to warn Big Bud of the defects and later correct them. This second counterclaim is sufficient under the pleading requirements of Fed.R.Civ.P. 8 to give fair notice also of a claim in strict liability under Wisconsin law. Big Bud asserts the claim that the product in issue was defective and unreasonably dangerous.[1]

---

1. Big Bud's second counterclaim states in part:
*SECOND COUNTERCLAIM*
*(Negligence)*

17.
As its Second Counterclaim against TWIN DISC, BIG BUD realleges Paragraphs 1, 2, 3 and 5, and further alleges:

Big Bud's third counterclaim asserts a cause of action for breach of contract arising out of Twin Disc's failure to deliver its transmission equipment in a timely fashion.

Finally, Big Bud's fourth counterclaim is for business compulsion through economic duress. It alleges that Twin Disc intentionally declined further shipment of transmission equipment and imposed payment requirements contrary to the parties' agreement for the purpose of compelling Big Bud to settle its account under circumstances of duress. The fifth counterclaim is for intentional interference with economic expectations; it charges Twin Disc with attempting to subvert Big Bud's relationship with its third-party suppliers by informing them of Big Bud's financial diffi-

culties. The fourth and fifth counterclaims will be dismissed.

The parties to this dispute agree that the transmission equipment supplied by Twin Disc did not function properly when installed in the tractor. The parties further agree that the problem centered on a component part of the tractor transmission, i.e., the shift controller. This component was manufactured for Twin Disc by Grad-Line and was incorporated into the transmission units which Twin Disc sold to Big Bud.

On May 27, 1981, Big Bud filed a third-party complaint against Grad-Line as manufacturer of the controller component, demanding judgment from Grad-Line in excess of forty-nine million dollars in dam-

18.

TWIN DISC designed and manufactured a series of components for the transmission of power to the axels [sic] of heavy equipment. The components consisted primarily of a power shift unit, a transmission and a torque converter. The components were utilized in other heavy equipment, and then the equipment was modified, redesigned, manufactured and constructed expressly for BIG BUD. TWIN DISC knew such components would be installed in the large agricultural tractors BIG BUD produced.

19.

The transmission equipment system which TWIN DISC designed, manufactured and sold to BIG BUD was defective, dangerous, and unacceptable for its intended use. The defects were caused by TWIN DISC's negligence. As a proximate result of TWIN DISC's negligence the power shift unit sometimes skipped intermediate gears, changed from forward to reverse, refused to go into gear or engaged in gear when supposedly in neutral. The blades in the torque converter were incorrectly set for use in conjunction with a high horse power engine resulting in an overheating of engine and transmission fluids.

20.

Plaintiff knew or should have known in the exercise of ordinary care, that the transmission equipment, if improperly and negligently designed was potentially hazardous. Nevertheless, TWIN DISC disregarded its duty to properly design and test the product, and allowed the transmission equipment to enter the stream of commerce in an unsafe and defective condition.

21.

Plaintiff's negligence consisted of the following:

(1) Failure to properly design and adequately test the power shift units, transmissions and torque converters it sent to Defendant;

(2) Failure to carefully construct the power shift units transmissions and torque converters it sent to Defendant.

(3) Failure to inspect the finished components and discover flaws in them before shipment to Defendant.

(4) Failure to warn Defendant and its customers of the defective design or that the equipment was potentially dangerous.

(5) Failure to correct the defects and the improper design of the power shift units, transmissions and torque converters upon being notified by Defendant that components was [sic] defective.

(6) Repeatedly sending Defendant defective products necessitating four separate retrofits.

(7) Failure to maintain proper standards in constructing and marketing the said equipment.

(8) Failure to hire proper suppliers and subcontractors to provide proper components for the said equipment.

(9) Failure to properly replace defective equipment.

(10) Using a defective, poorly designed device in its power shift units.

(11) Failure to take all, or in fact any steps to eliminate faults and danger from the said devices.

\* \* \* \* \* \*

The special master found that this counterclaim satisfied the notice pleading test in regard to its assertion of both negligence and strict liability claims. I adopt this recommendation of the special master.

ages. The third-party complaint will be dismissed. This pleading raises both warranty and products liability claims. Claim one alleges that Grad-Line's controller is subject to an express warranty created by sample and to implied warranties of merchantability and fitness for a particular purpose. Big Bud claims that these warranties were breached.

The second claim of the third-party complaint is in tort and parallels Big Bud's second counterclaim against Twin Disc. The pleading is sufficient to allege causes of action against Grad-Line in both negligence and strict liability.

## III. PRETRIAL PREPARATION

Shortly after Big Bud filed its third-party complaint, discovery was commenced. In July of 1982, Big Bud filed a voluntary petition in bankruptcy, and all proceedings in the case were stayed for almost a year. On June 6, 1983, the bankruptcy stay was lifted. A new discovery and trial schedule was set and the case resumed.

Discovery has been marked by discord and intransigence among counsel. By October 1983, the case had become unmanageable, and, therefore, the appointment of a special master was required. Attorney Ellis R. Herbon was named special master on October 25, 1983. He was charged with the task of preparing the case for trial, with each party to bear an equal share of the fees and expenses incurred by the master. Upon submission of his final report dated February 9, 1984, the special master completed the responsibilities of his appointment. The Court is grateful for the

time and energy Mr. Herbon devoted to this matter.

The Court now shall proceed to address the final recommendations of the master. First, the substantive issues presented in the pending motions for summary judgment will be resolved. Second, the Court will dispose of all remaining discovery disputes. Third, the evidentiary questions raised in the motions in limine will be discussed. Finally, the Court will address the master's recommendations relating to witnesses and trial time.

## IV. MOTIONS FOR SUMMARY JUDGMENT

Twin Disc moves for summary judgment as to Big Bud's first, second, fourth, and fifth counterclaims.[2] Twin Disc concedes that the third counterclaim, relating to the alleged breach of contract for failure to timely deliver, generates disputes of fact. Grad-Line likewise seeks summary judgment on both the tort and warranty allegations of the third-party complaint. The Court first will discuss whether Big Bud may assert any tort claims in this action; thereafter, the Court will analyze in turn the challenges to Big Bud's warranty claims.

### A. BIG BUD'S TORT CLAIMS

Both Twin Disc and Grad-Line contend that judgment should be entered in their favor as to Big Bud's negligence and strict liability theories of recovery. Their argument raises a policy-laden question regarding the interface between the law of contracts and the law of torts: Is a manufacturer that is not an ultimate user or consumer entitled to recover in tort, or is its

---

**2.** In responding to Twin Disc's motion for summary judgment, Big Bud did not defend its fourth and fifth counterclaims. Indeed, counsel for Big Bud stated by letter dated February 8, 1984, that Big Bud does not intend to request special verdict questions or jury instructions on the fourth counterclaim, and that it does not intend to offer evidence at trial in support of its fifth counterclaim. The special master regarded Twin Disc's motion to be moot as against these counterclaims; the master has made no recommendation as to them.

This Court, however, considers Twin Disc's motion as against the fourth and fifth counterclaims to be unopposed. The Court accordingly shall direct entry of judgment dismissing those counterclaims from the case. Moreover, insofar as subparagraphs (k) and (*l*) of Big Bud's request for damages against Twin Disc is predicated on only the dismissed counterclaims, those elements of damages, totalling $4 million, are also dismissed. The crux of the Twin Disc and Grad-Line summary judgment motions is the attack on Big Bud's tort and warranty allegations.

recovery limited to the law of contracts? The special master considered this to be a question of first impression in Wisconsin.

The parties have framed the issue presented as whether Big Bud may recover losses of a purely economic nature under negligence and strict liability theories. Big Bud contends that Wisconsin law allows recovery of economic losses in tort. Big Bud is correct. *See A.E. Investment Corp. v. Link Builders, Inc.,* 62 Wis.2d 479, 490, 214 N.W.2d 764, 769–70 (1974) (negligence); *City of LaCrosse v. Schubert, Schroeder & Associates, Inc.,* 72 Wis.2d 38, 44–45, 240 N.W.2d 124, 127–28 (1976) (strict liability). The Wisconsin Supreme Court has not drawn the line between tort cases and warranty actions on the basis of the nature of the plaintiff's injury and how he sustained it, as other jurisdictions have. *See, e.g., Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.,* 652 F.2d 1165 (3d Cir. 1981) (Pennsylvania law).

Nevertheless, this Court is aware of no Wisconsin cases which would allow an intermediate purchaser or manufacturer, as well as an ultimate user or consumer, to recover under theories of negligence or strict liability. Big Bud's tort claims against Twin Disc and Grad-Line are dismissed not because the alleged injury is purely economic in nature, but instead because Big Bud is not an ultimate consumer of the transmissions involved in this case.

In *City of Franklin v. Badger Ford Truck Sales,* 58 Wis.2d 641, 207 N.W.2d 866 (1973), for example, the Wisconsin Supreme Court upheld a jury verdict finding a component part manufacturer strictly liable to an end user or consumer. The court stated that

> [w]here there is no change in the component part itself, but it is merely incorporated into something larger, and where the cause of the harm or injury is found, as here, to be a defect in the component part, we hold that, *as to the ultimate user or consumer,* the strict liability standard applies to the maker and supplier of the defective component part.

58 Wis.2d at 649, 207 N.W.2d 866 (emphasis added). In so holding, the supreme court specifically embraced Comment q to section 402A of the Restatement (Second) of Torts, dealing with the sale of component parts of a product that requires assembly or further processing. The language of the comment adopted by the Wisconsin Supreme Court states: "It is no doubt to be expected that where there is no change in the component part itself, but it is merely incorporated into something larger, the strict liability will be found to carry through to the *ultimate user or consumer."* Restatement (Second) of Torts § 402A Comment q (1965), *quoted in Badger Ford Truck Sales,* 58 Wis.2d at 649 n. 6, 207 N.W.2d 866 (emphasis added).

In each of the cases cited to the Court, the plaintiff was an end user or consumer of the defective product. *E.g., Air Products & Chemicals, Inc. v. Fairbanks Morse, Inc.,* 58 Wis.2d 193, 206 N.W.2d 414 (1973) (plaintiff corporation purchased large electric motors for use in its business). In the instant case, Big Bud is an assembler or manufacturer of tractors. Incorporated in those tractors are component transmission units, which themselves contain component parts called controllers. Big Bud purchases these component parts from various suppliers, incorporates them in the manufacture of its tractors, and then sells the tractors to various distributors and ultimately to the ultimate consumer—the farmer. This case might be different if a farmer, as the ultimate user or consumer, was injured because his tractor jumped out of gear; he might well be able to sue Big Bud, Twin Disc, and Grad-Line in tort. Under the facts presented, however, Big Bud is limited to theories of warranty and contract law to recover against the suppliers of its component parts.

This approach, based on the nature and position of the parties, finds support not only in decisions of the state supreme court but also in the policies underlying Wisconsin's commercial code. This case is a classic commercial action. To govern commercial transactions, Wisconsin has adopted the Uniform Commercial Code, which,

along with the law of contracts, establishes a framework of rights and remedies for economic enterprises. Specific provisions of the state commercial code apply to warranties, *e.g.*, Wis.Stat. § 402.313 (1981); warranty disclaimers, *e.g.*, Wis.Stat. § 402.-316 (1981); and limitations of remedies, *e.g.*, Wis.Stat. § 402.719 (1981). To allow tort remedies to overlay this commercial framework when the plaintiff is not an ultimate user or consumer would undermine certainty and predictability in business relationships and thus vitiate one of the reasons for codifying the law of commercial transactions.

For the foregoing reasons, the motions of Twin Disc and Grad-Line for summary judgment as against Big Bud's tort claims are granted. Big Bud's second counterclaim against Twin Disc and its third-party causes of action in negligence and strict liability against Grad-Line are dismissed from the case.

## B. BIG BUD'S WARRANTY CLAIMS

Big Bud's principal causes of action in this case lie not in tort law but in contract and warranty law. Its first counterclaim against Twin Disc alleges a breach of express warranties of sample and of workmanship and materials; the first counterclaim likewise alleges a breach of implied warranties of merchantability and fitness for a particular purpose. Big Bud's third counterclaim alleges a straight breach of contract by Twin Disc. Twin Disc argues that this Court should dismiss as a matter of law all the allegations of the first counterclaim except those relating to the express warranty of workmanship and materials.

Similarly, Big Bud alleges that Grad-Line likewise breached an express warranty of sample and implied warranties of merchantability and fitness for a particular purpose in regard to the controller Grad-Line manufactured for Twin Disc's power shift unit. Grad-Line requests entry of summary judgment in its favor against each of these warranty claims. The Grad-Line and Twin Disc motions will be discussed in turn.

Summary judgment may be entered when no material facts are genuinely in issue and the moving party is entitled to judgment as a matter of law on the basis of the undisputed facts. Federal Rules of Civil Procedure 56(c). Whether Twin Disc or Grad-Line warranted their products to Big Bud will depend on the law of Wisconsin. The "grouping of contacts" approach set forth in *Urhammer v. Olson*, 39 Wis.2d 447, 159 N.W.2d 688 (1968), is the choice of law rule applicable in this case. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). *See Rototron Corp. v. Lake Shore Burial Vault Co.*, 553 F.Supp. 691 (E.D.Wis.1982).

In applying that test to this case, I find that Wisconsin, the residence of Twin Disc, has the most significant relationship to the parties and transactions involved. The most important contacts in this action are those between Grad-Line and Twin Disc and between Twin Disc and Big Bud. The dealings, if any, that Grad-Line had with Big Bud in Montana after the product difficulties developed are not sufficient to justify applying Montana law to the third-party warranty allegations. Wisconsin law governs.

### 1. *Grad-Line's Motion*

Grad-Line's chief contention on summary judgment is that it cannot be liable to Big Bud for breach of warranty without being in privity of contract with Big Bud. It is undisputed that Grad-Line did not enter into any written or oral contract with Big Bud for the manufacture or sale of controllers. Grad-Line asserts that Big Bud dealt as a buyer only with Twin Disc and that Big Bud had no contact whatever with Grad-Line until product malfunctions began.

Big Bud, on the other hand, contends that the nature and extent of its direct dealings with Grad-Line will determine whether Grad-Line expressly or impliedly warranted its controllers. According to Big Bud, there is a genuine factual dispute in regard to its dealings with Grad-Line. It

is Big Bud's position that it acquired a relationship of privity with Grad-Line by virtue of Grad-Line's conduct. Specifically, it is alleged that Grad-Line sent personnel to Big Bud to supervise repair work performed on the shift controllers; that replacement controllers were shipped directly between Grad-Line and Big Bud for repairs; and that Grad-Line invoices were sent to Big Bud for repair work performed. This conduct, Big Bud asserts, gave rise to a unilateral warranty contract running from Grad-Line to Big Bud.

■ Wisconsin law requires privity of contract between the parties before liability can be founded on breach of express or implied warranty. *Paulson v. Olson Implement Co.*, 107 Wis.2d 510, 319 N.W.2d 855 (1982); *LaCrosse v. Schubert, Schroeder & Associates, Inc.*, 72 Wis.2d 38, 240 N.W.2d 124 (1976); *Barlow v. DeVilbiss Co.*, 214 F.Supp. 540 (E.D.Wis.1963). The special master in this case nevertheless concluded that the privity question presented factual issues whether there were any direct dealings between Big Bud and Grad-Line, and, if so, whether those dealings were of such a character as to warrant a finding of privity.

■ It is evident that Big Bud relies for its privity argument only on the dealings it had with Grad-Line in relation to the servicing and repair of shift controllers when they began to go on the blink. Taking as true Big Bud's understanding of these contacts, I find that they are insufficient as a matter of law to generate a unilateral warranty contract. There is no issue of fact to be tried here. The business relationship between Big Bud and Grad-Line was not one of privity. Grad-Line is entitled to a judgment of dismissal on both Big Bud's tort and warranty claims. The third-party complaint is dismissed.

2. *Twin Disc's Motion*

The heart of this case are the allegations that Twin Disc breached its contract with and warranties to Big Bud. Twin Disc's argument for summary judgment as against the warranty claims is fourfold, as follows. First, Twin Disc did not send to Big Bud a "sample or model" transmission intended by the parties to form a basis of the contract. Second, Twin Disc's order acknowledgment form warranted its products against defective workmanship and materials and provided that "no other warranties express or implied are intended or given by Twin Disc ...." This limited warranty disclaims any express warranty of sample and any implied warranties of fitness and merchantability. Third, Big Bud made repeated demands on Twin Disc to fulfill the terms of the limited warranty, some of which demands Twin Disc has honored. Having invoked the benefits of Twin Disc's limited warranty, thus relying on that warranty by its course of dealing, Big Bud is barred from raising its claim for breach of implied warranties. Finally, because Big Bud purports to base a part of its first counterclaim on Twin Disc's limited warranty, Big Bud is estopped from asserting claims based on other implied warranties.

Big Bud's primary response to Twin Disc's motion is that the warranty limitations in Twin Disc's order acknowledgment form did not become part of the contract. Big Bud's purchase orders were offers to contract which Twin Disc accepted with its standard acknowledgment form. This form, however, contained additional terms—the warranty limitations—which materially altered the contract as accepted by Twin Disc. These additional terms, according to Big Bud, constitute new offers. Because Big Bud did not accept the new warranty terms, those additional terms fell out of the contract. Finally, Big Bud contends, the warranty limitations cannot be a basis of the contract in any event because such provisions were not negotiated, bargained for, or agreed upon as such.

Additionally, Big Bud asserts that whether Twin Disc expressly warranted its transmission units by sample and whether Big Bud's own course of dealing bars its implied warranty claims are classic questions of fact in this case.

**216**

In reply, Twin Disc argues that the terms of its order acknowledgment form did become part of the contract. This form expressly conditioned acceptance of Big Bud's purchase order on Big Bud's assent to the terms of the acknowledgment form. Twin Disc's order acknowledgment form, thus, in fact was a counteroffer. There is no doubt, according to Twin Disc, that Big Bud was aware of the limited warranty provisions of this "counteroffer" and that Big Bud assented to the terms of the "counteroffer" by its course of conduct.

■ Upon review of the record in light of these arguments, the special master recommended denial of Twin Disc's motion for summary judgment. He concluded that issues of fact exist whether there was a sale by sample in this case, whether there was mutual assent to the warranty limitation language of Twin Disc's acknowledgment form, and whether Big Bud's warranty claims are barred by its course of dealing.

The special master's recommendation on Twin Disc's motion is correct and will be adopted by the Court. Summary dismissal of Big Bud's warranty claims against Twin Disc is inappropriate on this record. Twin Disc's motion is denied as to these claims.

C.  SUMMARY OF ISSUES REMAINING

1.  How much, if any, is Twin Disc entitled to recover on its account with Big Bud?

2.  Did Twin Disc breach its contract with Big Bud by failing to deliver its transmissions on time? (Third counterclaim.)

3.  Did Twin Disc breach its express warranty of workmanship and materials?

4.  Was an express warranty created by sample? Was it breached?

5.  Were implied warranties of merchantability and fitness for a particular purpose made? Were they breached?

6.  Did the warranty disclaimer on Twin Disc's order acknowledgment form become part of the contract?

(a) Was Twin Disc's acknowledgment form an acceptance of the original purchase order with a proposal to add new terms which materially altered the contract?

(b) Was Twin Disc's acknowledgment form, instead, a mere counteroffer which Big Bud assented to by its conduct?

7.  Are the alleged implied warranties barred by Big Bud's course of dealing?

8.  Is Big Bud estopped to rely on the alleged implied warranties?

9.  What damages, if any, did Big Bud suffer as a result of the alleged breaches?

V.  DISCOVERY MOTIONS

■ In his final report of February 16, 1984, the special master issued recommendations for resolving the last of the discovery motions pending in the case. First, Twin Disc moved to compel Big Bud to produce documents and to properly answer interrogatories. The special master found that Big Bud had substantially complied with the document request, and the motion to compel production in any event was untimely. He likewise determined that it would be oppressive to require further interrogatory answers from Big Bud in view of its substantial compliance to date. The special master recommended denial of Twin Disc's discovery motion.

Second, Big Bud filed motions to compel production of documents from Twin Disc and to permit deposition of Twin Disc experts. The special master recommended denial of these motions because they were untimely.

Third, Grad-Line moved to compel Big Bud's President, Ronald M. Harmon, to produce certain personal tax records and to answer certain questions posed to him at his deposition. The special master recommended that this motion be granted in part and denied in part.

Insofar as Grad-Line by this order is dismissed from the case, its discovery motion is denied in full as moot. As to the discovery motions of Big Bud and Twin Disc, the special master's recommendations are approved and adopted in full. Discovery is at an end. The case is ready for trial.

## VI. MOTIONS IN LIMINE

Twin Disc filed a motion in limine to exclude evidence and argument concerning eleven separate topics. The special master recommended denial of this motion as to each category of evidence except evidence of Twin Disc's net worth and earnings, which Big Bud might offer in support of its punitive damage claims. According to the special master, such punitive damage evidence should be excluded. The Court approves and adopts in full the recommendations of the special master in regard to this motion. Twin Disc's motion in limine is granted as to evidence of its net worth and earnings. Twin Disc's other motions in limine are denied without prejudice and may be renewed at trial.

Big Bud likewise seeks to exclude evidence in advance of trial. In its motion in limine, it requests exclusion of evidence on the assignment of its claim in this case to the Borg-Warner Acceptance Corporation. Big Bud also seeks to exclude any evidence of claims or counterclaims it has asserted against other suppliers in other cases. Upon review of the record and briefs submitted, the special master concluded that evidence on these subjects should not be excluded at this time. I adopt this recommendation. Big Bud's motions in limine are denied without prejudice and may be renewed at trial.

## VII. TRIAL TIME

Finally, the special master in this case has examined the witness lists of each party and has estimated the time needed for each witness to testify. In light of the dismissal of Grad-Line from the case and the elimination of all tort law issues, I find that the special master's recommendation for the total allowable trial time should be reduced by twenty percent. Accordingly, Big Bud may use no more than twenty-two hours of total trial time; Twin Disc is limited to eighteen hours. These time limits include the time required for each party to put in its case-in-chief and to cross-examine its adversary's witnesses. The time limits do not include the time required for voir dire or for opening and closing statements. Each party may allocate its allotted time among its various witnesses as it sees fit.

## ORDER

IT IS THEREFORE ORDERED that:

1. The motion for summary judgment of third-party defendant Grad-Line, Inc., is granted.

2. The motion for partial summary judgment of plaintiff Twin Disc, Inc., is granted as to the tort counterclaim and denied as to the warranty counterclaims.

3. The special master's recommendations as to the parties' discovery motions are approved and adopted in accordance with part V of this decision and order.

4. The special master's recommendations as to the motions in limine of Big Bud, Inc., and Twin Disc, Inc., are approved and adopted in full as set forth in part VI of this decision and order.

5. The jury trial will commence at 9:30 A.M. on Monday, April 9, 1984.