*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*





# MEMORANDUM OPINION

No. 04-10-00812-CV

**ENGINE COMPONENTS, INC**.,
Appellant

v.

**A.E.R.O. AVIATION COMPANY, INC**.,
Appellee

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2006-CI-10203
Honorable Renée F. McElhaney, Judge Presiding

Opinion by:    Steven C. Hilbig, Justice

Sitting:        Catherine Stone, Chief Justice
                Sandee Bryan Marion, Justice
                Steven C. Hilbig, Justice

Delivered and Filed:  February 29, 2012

REVERSED AND RENDERED

Engine Components, Inc. (ECI) appeals the judgment rendered in favor of A.E.R.O. Aviation Company, Inc (A.E.R.O.) on its indemnity claim. The judgment awarded A.E.R.O. $1,322,354.26 for its defense costs in a product liability lawsuit in Wisconsin and the amount it paid to settle the Wisconsin lawsuit. A.E.R.O. was also awarded $363,685.90 in attorney's fees, expenses, and court costs incurred in the indemnity action. In ECI's first issue, it contends the

trial court erred in applying Texas law instead of Wisconsin law to the indemnity claim.[1] We agree with ECI and reverse and render.

## BACKGROUND

A.E.R.O. and ECI were sued in Wisconsin in a product liability action that arose from a crash of a Cessna aircraft in Wisconsin. The crash killed the three occupants, all of whom were Wisconsin residents.

A.E.R.O. is an Illinois corporation with its principal place of business in that state. ECI is a Delaware corporation with its principal place of business in Texas. A.E.R.O. called ECI and requested it work on the core cylinder assembly. A.E.R.O. sent the core cylinder assembly to ECI so that ECI could "re-barrel" it. ECI completed the requested work and sent a "cylinder stud assembly" back to A.E.R.O. in Illinois. A.E.R.O. added parts to make it into a complete, airworthy cylinder assembly. A.E.R.O. then sold and shipped the completed assembly to its customer, Cacic Aviation in Wisconsin, and Cacic installed it on the plane in Wisconsin.

While the Wisconsin lawsuit was pending, A.E.R.O. tendered its defense to ECI under section 82.002 of the Texas Civil Practices and Remedy Code. ECI did not accept the tender and A.E.R.O. filed suit in Texas for indemnity. Meanwhile, after two years of litigation in the Wisconsin case, A.E.R.O. moved for summary judgment on all claims except the strict product liability claim. The plaintiffs did not oppose, and it was granted. A.E.R.O. then settled with the plaintiffs for $100,000; ECI later settled for $4.5 million.

ECI filed a motion for summary judgment in the Texas suit asserting, based on choice of law principles, that Wisconsin law applied and that there is no right to indemnity. The motion was denied. ECI next filed a Rule 202 motion, requesting a determination that Wisconsin law applied and asking the court to take judicial notice of Wisconsin law. The motion was denied.

---

[1] Because we reverse on issue one we do not need to address ECI's other four issues.

Shortly before trial, ECI filed a motion asking, among other things, the trial court to reconsider its ruling regarding the application of Wisconsin law. The trial court reaffirmed its earlier ruling that Texas law would be applied.

## DISCUSSION

## CHOICE OF LAW

The determination of which state's law applies is a question of law we review de novo.[2] *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 848 (Tex. 2000); *Minn. Mining & Mfg. Co. v. Nishika Ltd.*, 955 S.W.2d 853, 856 (Tex. 1996). ECI contends that the trial court erred in applying Texas product liability indemnity law and that Wisconsin law should have been applied to A.E.R.O.'s indemnity claim.

### Wisconsin and Texas Indemnity Law

The first issue to be addressed in a choice of law analysis is whether the applicable laws from the two jurisdictions differ. *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 419 (Tex. 1984); *Ford Motor Co. v. Aguiniga*, 9 S.W.3d 252, 259-60 (Tex. App.—San Antonio 1999, pet. denied). If the court determines the laws differ, the court must then determine the appropriate law to apply by using the Restatement (Second) of Conflicts of Law principles in the context of the subject matter of the particular issue to be resolved. *See Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 205 (Tex. 2000). However, the Supreme Court in *Duncan* held that even if the laws differ, there may not be a conflict when only one forum has an interest at stake. *Id*. This is referred to as a "false conflict." *Duncan*, 665 S.W.2d at 422; *Ford Motor Co.*, 9 S.W.3d at 260.

---

[2] A.E.R.O. argues that ECI failed to provide the trial court with sufficient information to enable it to determine the choice of law issue. We disagree. ECI filed a Rule 202 motion that specifically identified the conflict between Texas and Wisconsin law. ECI also presented the affidavit of an attorney from Wisconsin that stated Wisconsin does not have a statute that requires a manufacturer indemnify an innocent retailer.

*Wisconsin law*

Wisconsin has adopted the rule of strict liability in product liability cases as set forth in section 402A of Restatement (Second) of Torts and has not enacted any statutes that modify the section's imposition of liability on an innocent retailer. *See Dippel v. Sciano*, 155 N.W.2d 55, 63 (1967). Wisconsin's objective in the area of strict products liability is to "impos[e] the risk of loss associated with the use of defective products on the party that created and assumed the risk, reaped the profit by placing it in the stream of commerce, impliedly represented that the product was safe and fit for use by placing it in the stream of commerce, and had the ability to implement procedures to avoid the distribution of defective products in the future." *Rolph v. EBI Cos*., 464 N.W.2d 667, 671 (Wis. 1991). Wisconsin analyzes strict liability in product liability cases as negligence *per se*. *Fuchsgruber v. Custom Accessories, Inc*., 628 N.W.2d 833, 839 (Wis. 2001).

There is no Wisconsin statute requiring a manufacturer to indemnify an innocent retailer and the Wisconsin Supreme Court specifically declined to adopt such a requirement. *See City of Franklin v. Badger Ford Truck Sales*, 207 N.W.2d 866, 872-73 (Wis. 1973). In *Franklin*, the seller of a fire truck equipped with a defective and unreasonably dangerous wheel was found strictly liable along with the wheel manufacturer and the truck chassis manufacturer. Despite the observation that the seller "was in no position to detect the hidden defect," the *Franklin* court reversed an indemnity judgment in favor of the seller and against the other defendants. *Franklin* held that where each of multiple defendants is guilty of negligence as a matter of law toward the plaintiff, the applicability of contribution, not indemnity, between multiple defendants is required. *Id.* at 870. The *Franklin* court noted: "'The granting of indemnity in any situation represents a judicial choice of policy.'" *Id*. at 872 n. 17 (quoting *Gies v. Nissen Corp*., 204 N.W.2d 519, 527 (Wis. 1973)). The court in *Geis* noted:

This court in *Pachowitz v. Milwaukee & S. Transport Corp*, (citation omitted) in rejecting a rule that would have permitted one "passively" negligent to obtain indemnity from one "actively" negligent, stated:

> "Such an all-or-nothing result between negligent co-tort-feasors would be contrary to the Wisconsin concept of imposing liability and awarding recovery in proportion to the percentage of causal negligence attributable to each of the co-tort-feasors. . . ."

Under the allegations of the appellants' cross complaint, appellants are not entitled to indemnification from the seller. . . . Their cause of action was one for contribution.

*Geis*, 204 N.W.2d at 527. Wisconsin has clearly rejected a total shifting of responsibility and has opted for only contribution. An innocent retailer is entitled only to the defense of contributory negligence under Wisconsin's comparative fault scheme. *See* WIS. STAT. § 895.045 (2011).

*Texas law*

With some exceptions, chapter 82 of the Texas Civil Practice and Remedies Code obligates manufacturers to indemnify innocent sellers from product liability actions arising out of their products. TEX. CIV. PRAC. & REM. CODE ANN. § 82.002 (West 2011). This duty is a creature of statute and is distinct from the duties owed by manufacturers under the common law. *Owens & Minor, Inc. v. Ansell Healthcare Prods., Inc*., 251 S.W.3d 481, 483–84 (Tex. 2008) (comparing common law duty to statutory duty); *Fitzgerald v. Advanced Spine Fixation Sys., Inc*., 996 S.W.2d 864, 866 (Tex. 1999) ("The duty [to indemnify] is a new, distinct statutory duty. . . .").

Section 82.002(a) of the Texas Civil Practice & Remedies Code provides:

[A] manufacturer shall indemnify and hold harmless a seller against loss arising out of a products liability action, except for any loss caused by the seller's negligence, intentional misconduct, or other act or omissions, such as negligently modifying or altering the product, for which the seller is independently liable.

TEX. CIV. PRAC. & REM. CODE ANN. § 82.001 2(a) (West 2011). This chapter defines a "seller" as

> A person who is engaged in the business of distributing or otherwise placing, for any commercial purpose, in the stream of commerce for use or consumption a product or any component part thereof.

*Id.* § 82.001(3). A "seller" is one who "commercially distributes a product." *SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 449 (Tex. 2008). The legislature drafted chapter 82 to provide indemnity for all retailers of a defective product. *See New Tex. Auto Auction Servs., L.P. v. Gomez de Hernandez*, 249 S.W.3d 400, 405 (Tex. 2008). The difference between Texas and Wisconsin law is clear—Texas allows an "innocent retailer" indemnity; Wisconsin follows section 402A strict liability and holds sellers and manufacturers who placed defective products into the stream of commerce equally liable.

Relying on *Ford Motor Co. v. Aguiniga*, 9 S.W.3d 252 (Tex. App.—San Antonio 1999, pet. denied), A.E.R.O. argues that any conflict in the law, which it contends does not exist, is a false conflict because Texas has a "fundamental policy" to protect innocent sellers. The issue in *Aguiniga* was whether Mexico law limiting damages should be applied in a Texas lawsuit. *Id.* at 259. Although there was a clear difference between Texas and Mexican law on the issue, the court determined it was a "false conflict." *Id.* at 260-61. The court concluded Mexico had no interest in the Texas litigation because neither defendant was a Mexico resident, the majority of the plaintiffs were Texas residents, and the vehicle involved in the accident was inspected and primarily operated in Texas. *Id.* The court held that given these contacts, the only interest at stake was that of Texas. *Id.*

Here, there is a strong connection between the indemnity claim and Wisconsin. The defective product was placed into the stream of commerce in Wisconsin. The product was sold

to an aviation repair facility in Wisconsin to be placed on an aircraft in Wisconsin. Wisconsin was the jurisdiction where the underlying product suit was filed. Wisconsin has a clear interest in both the product liability claim and indemnity between joint tortfeasors. *See Franklin*, 207 N.W.2d at 873. There is a true conflict between Wisconsin and Texas law regarding indemnity in the product liability context.

## Most Significant Relationship Test

Texas courts use the Restatement (Second) of Conflict of Laws "most significant relationship" test to decide choice of law issues. *Torrington Co*., 46 S.W.3d at 848; *Hughes*, 18 S.W.3d at 205; *see also* RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 6, 145 (1971). Under this test, a court must consider which state's law has the most significant relationship "to the particular substantive issue to be resolved." *Hughes*, 18 S.W.3d at 205. Section 6 of the Restatement lists the general factors used to decide a choice-of-law question:

    (a) the needs of the interstate and international systems;
    (b) the relevant policies of the forum;
    (b) the relevant policies of other interested states and the relative interests of those
    states in the determination of the particular issue;
    (c) the protection of justified expectations;
    (d) the basic policies underlying the particular field of law;
    (e) certainty, predictability, and uniformity of result; and
    (f) ease in the determination and application of the law to be applied.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS, § 6(2); *see Torrington Co*., 46 S.W.3d at 848.

We begin our choice of law analysis by consulting section 173 of the Restatement of Conflict of Laws, which specifically addresses indemnity. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 173 (1971); *see also Hughes Wood Prods., Inc*., 18 S.W.3d at 206 n. 2 (stating that "[this] Court has often applied more specific sections of the Restatement to address particular choice of law issues."). Section 173 of the Restatement directs us to consider the contacts listed in section 145 in applying the section 6 principles. RESTATEMENT (SECOND) OF CONFLICT OF

LAWS § 173. Section 145 lists the factual matters to be considered when applying the section 6 principles. *See Hughes,* 18 S.W.3d at 205. These factors include: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered. RESTATEMENT (SECOND) OF CONFLICT OF LAWS, § 145(2).

The first two factors of section 145 point to Wisconsin. The place where the injury occurred is Wisconsin. A.E.R.O.'s injury as to its indemnity claim occurred when it incurred legal expenses and defense costs, and paid the Wisconsin plaintiffs a sum to settle the case. The conduct that gave rise to the injury occurred in Wisconsin when the cylinder assembly was placed into the stream of commerce. The domicile, residence, nationality, place of incorporation, and place of business of the parties is mixed between Texas, Illinois, and Delaware. ECI is a Delaware corporation with its principal place of business in Texas. A.E.R.O. is an Illinois corporation, with its principal place of business in that state. The place where the relationship between the parties is centered is also mixed. ECI, in Texas, was contacted by A.E.R.O., in Illinois, by phone and asked to work on the cylinder assembly. The assembly was shipped to ECI in Texas, where ECI completed the work. The assembly was then shipped back to A.E.R.O. in Illinois, and A.E.R.O. then sold it to a company in Wisconsin, where it was placed into the stream of commerce.

We next evaluate these contacts according to their relative importance to the indemnity issue before us. *Minn. Mining & Mfg. Co.*, 955 S.W.2d at 856. We evaluate each state's contacts not by their number, but by their quality. *Id.*; *Duncan*, 665 S.W.2d at 421.

We believe the policy considerations in section 6 of the Restatement favor the application of Wisconsin law to resolve the indemnity issue. Wisconsin has underlying interests in the application of its law, and Texas has few if any interests. The product liability suit was not brought in Texas and the plaintiffs were not Texas residents. The product was put into the stream of commerce in Wisconsin, the airplane crash occurred in Wisconsin, and the plaintiffs were Wisconsin residents. The parties litigated their case under Wisconsin law. The damages sought related only to the settlement paid to Wisconsin residents and the fees and expenses incurred in litigating the Wisconsin case. Applying Wisconsin law protects the parties' justified expectations and provides certainty, predictability and uniformity of result to litigants in all matters related to the main event—the product liability claim. *See Panatrol Corp. v. Emerson Elec. Co.*, 163 S.W.3d 182, 188 (Tex. App.—San Antonio 2005, pet. denied) ("Applying the law of the forum in which the underlying product liability and contribution disputes will be resolved protects the parties' justified expectations; provides certainty, predictability and uniformity of result."). Wisconsin has an interest in how liability is allocated in litigation in its courts.

Wisconsin has specifically addressed the question of whether an innocent retailer can recover indemnity or contribution. The Wisconsin supreme court opted for a comparative fault scheme rather than a total shift of liability. Wisconsin does not have a policy to protect innocent retailers, and has clearly stated innocent retailers are only entitled to contribution.

We hold ECI's obligation to indemnify A.E.R.O. must be determined under Wisconsin law. As discussed above, there is no right of indemnity under Wisconsin law; rather, joint tortfeasors are only entitled to contribution. *See* WIS. STAT. § 895.045 (2011). In this action A.E.R.O. initially sought contribution and indemnity, but before trial it amended its pleadings and sought only statutory and common law indemnity under Texas law. Furthermore, A.E.R.O.

has no claim for contribution because paragraph 12 of the Settlement and General Release by Plaintiffs and the Mutual Release between A.E.R.O. and ECI, provided as follows:

> In consideration for the foregoing covenants and stipulations, A.E.R.O. Aviation Company, Inc. covenants and stipulates that it will not pursue any claim for contribution under the law of any jurisdiction in any court against the ECi [sic] parties for any amount or portion of any amount of consideration A.E.R.O. Aviation Company, Inc. has paid to Releasors in settlement of this matter.

A.E.R.O. judicially admitted it had no right to contribution in its Fourth Amended Original Petition, Original Answer to Defendant's Original Counter Claim and First Original Counter-Claim against ECI. The trial court erred in applying Texas law and because there is no right of indemnity under Wisconsin law, we therefore reverse the trial court's judgment and render judgment that A.E.R.O. take nothing.

Steven C. Hilbig, Justice